DONALD W. LOVETT *v.* ATLAS TRUCK LEASING ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued May 6—decision released September 14, 1976

*Howard B. Field III,* with whom, on the brief, were *George A. Downing* and *Mark R. Perkell,* for the appellants (named defendant and Liberty Mutual Insurance Company).

*L. Paul Sullivan,* for the appellee (plaintiff).

*Edward D. O'Brien, Sr.,* assistant attorney general, with whom were *William J. Friedeberg,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant Henry E. Parker, state treasurer).

BOGDANSKI, J. This case requires this court to construe portions of General Statutes § 31-349, which governs the respective liabilities of an employer and the second injury and compensation assurance fund to an employee who has a preexisting permanent physical impairment and who subsequently suffers a second injury arising out of and in the course of his employment, resulting in a permanent disability. The defendants, Atlas Truck Leasing and the Liberty Mutual Insurance Company, appealed to the Court of Common Pleas from a finding and award of compensation by the workmen's compensation commissioner for the fifth congressional district. From the judgment dismissing the appeal the defendants have appealed to this court assigning error in the court's refusal to correct the finding and in the overruling of their claims at law.

On November 7, 1968, the plaintiff, Donald W. Lovett, sustained numerous severe injuries when a large truck tire, which he was repairing in the course of his employment, exploded.[1] The force exerted by the explosion caused a derangement of the rear portion of the eye, or retina, and lesions on the retina, known as macula, in each of the claimant's eyes. As a result of this injury, the vision in the left eye was reduced to 20/200, and the vision in his right eye was reduced to 20/60.

Prior to the accident, a routine employment-type physical examination revealed that the plaintiff had a condition in each eye known as "astigmatism." An examination of his eyeglasses disclosed that the astigmatism, uncorrected, would reflect a 33 percent diminution of vision in the left eye, and a 20 percent diminution of vision in the right eye. Astigmatism involves the shape of the front portion of the eye, the lens: the eye injuries caused by the accident of November 7, 1968, however, involved the retina at the rear of each eye.

The commissioner found that the injury to the retina of the left eye, in and of itself, could and did cause a 100 percent loss of vision in the left eye, and that the ultimate disability was not made substantially greater by the preexisting astigmatism. He also found that the plaintiff had a preexisting diminution of uncorrected vision in the right eye of 20 percent, and that, because of the second injury to the right eye, the disability of the right eye caused by both conditions was materially and substantially greater than that which would have resulted from

---

[1] While the claimant received injuries to his back, teeth, mouth, and jaws, only the issue of liability for compensation arising from eye injuries is involved in this appeal.

the second injury alone. He concluded that there was a 40 percent loss of uncorrected vision in the right eye.

On the basis of those findings, the commissioner awarded the plaintiff compensation for 235 weeks for the total loss of vision in the left eye, pursuant to provisions of General Statutes § 31-308, and ninety-three weeks of compensation for the 40 percent loss of vision in the right eye, pursuant to General Statutes § 31-349.[2]

The defendants have briefed only three of their assigned errors concerning the court's failure to correct the finding. All other errors directed at the finding are therefore considered abandoned. *Pappas* v. *Pappas,* 164 Conn. 242, 243–44, 320 A.2d 809; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495.

The defendants claim that the court should have found that the astigmatism together with the near-sightedness, rather than astigmatism alone, were the cause of the prior impairment of both eyes, and that the post-accident vision of the left eye was correctible with glasses. The inclusion of those facts in the finding would not affect the conclusions reached nor benefit the defendants in presenting the questions of law which they desire to have

---

[2] To the ninety-three weeks of compensation awarded for the right eye, the commissioner added four and two-sevenths weeks compensation previously awarded and paid to the claimant for temporary total disability in computing when the employer had paid in 104 weeks of compensation. The second injury fund was found to have no present liability, as the 104 weeks of compensation would not be paid by the employer. No finding was made as to the possibility of the fund becoming liable if future additional compensation were awarded. Thus, the employer was held liable for the full award.

reviewed by this court. See *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 381, 311 A.2d 77; *State* v. *Carnegie*, 158 Conn. 264, 266, 259 A.2d 628.

The defendants raise the issue whether the trial court erred in sustaining the commissioner's conclusion that the accident in itself produced the entire loss of vision in the left eye and that the preexisting astigmatism did not "materially and substantially" increase that loss of vision.

To prevail on that assignment of error, it is necessary to show that the conclusion reached by the trial court was legally or logically inconsistent with the facts found or that it involved the application of some erroneous rule of law material to the case. *New Haven* v. *United Illuminating Co.*, 168 Conn. 478, 483, 362 A.2d 785; *Hutensky* v. *Avon*, 163 Conn. 433, 437, 311 A.2d 92. In answer to the question whether the injuries to the eyes caused by the accident were made greater because of the original astigmatism, William B. Brewster, Jr., an opthamologist, the principal medical witness, testified that the injury to the back of the eye caused by the accident, in itself, was sufficient to cause total loss of vision to the left eye. He further stated that the preexisting problem made no difference at all. That testimony fully and reasonably supported the trial court's challenged conclusion.

The defendants next contend that where the accident, independent of any preexisting impairment, produces total disability, the employer should be entitled to deduct compensation for the amount of any preexisting disability.

In workmen's compensation cases, the general rule is that where the accident, in and of itself, causes total disability, the accident is deemed to be the entire cause of the resultant total disability

despite the existence of a preexisting impairment. *Jacques* v. *H. O. Penn Machinery Co.,* 166 Conn. 352, 356, 349 A.2d 847; *Fair* v. *Hartford Rubber Works Co.,* 95 Conn. 350, 111 A. 193. The rule is that the employee is entitled to full compensation where the accident is a substantial factor in producing the resultant disability. "Apportionment" between employer and employee exists solely by statute and is an exception to the rule. But even statutory apportionment is never relevant unless the preexisting impairment was "an essential factor" in causing the end result. The harshness of this rule has in recent times been mitigated by the adoption in most states of some form of second injury fund legislation whereby employer liability can be limited in certain circumstances as where an employee's preexisting permanent impairment, whether by prior accident, disease or congenital causes, combines with a second injury resulting in a materially and substantially greater disability. See *Jacques* v. *H. O. Penn Machinery Co.,* supra, 357. We nonetheless conclude that the manner of apportionment as advanced by these respondents does not apply to the present situation. See *Jacques* v. *H. O. Penn Machinery Co.,* supra; *Hartz* v. *Hartford Faience Co.,* 90 Conn. 539, 543, 97 A. 1020.

"To prevent discrimination against handicapped workers, while providing the benefits of workmen's compensation to such workers, virtually every state has enacted some form of second injury fund legislation. . . . Such legislation is also designed to relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment." *Jacques* v. *H. O. Penn Machinery Co.,* supra, 355–56. The current second injury legislation of this state, found in General

Statutes §§ 31-349 through 31-355 is a product of evolution, having its roots in 1945 Public Acts, No. 188. The General Statutes presently provide that any covered employee who "incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone . . . shall receive compensation for the entire amount of disability, including total disability, and necessary medical care, . . . notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes." General Statutes § 31-349. "By following the prescribed procedures, the employer may limit his liability to payments due in the first 104 weeks of the employee's second disability, after which the second injury fund assumes responsibility for compensation and medical treatment." *Jacques* v. *H. O. Penn Machinery Co.,* supra, 358.

For an award to be so apportioned between an employer and the second injury fund, however, the preexisting impairment must contribute materially and substantially to the resulting permanent disability. Thus, in *Andersen* v. *New York Hospital,* 5 A.D.2d 730, 169 N.Y.S.2d 176, the court, upon finding that the claimant was totally and permanently disabled from the accident alone and that his preexisting impairment had not materially increased the disability resulting from the accident, upheld the compensation board's award and absolved the special disability fund. Id., 730–31. Also, in the case of *Jussila* v. *Department of Labor & Industries,* 59 Wash. 2d 772, 370 P.2d 582, that court, in interpreting the state of Washington's second-injury fund

law, held that "[t]he legislature did not intend the Second-injury Fund law to apply to a case wherein the later injury was in itself sufficient to produce total permanent disability." Id., 778. In view of the commissioner's finding that the damage to the retina of the left eye, in and of itself, caused total loss of vision in the left eye, and that the ultimate disability was not made substantially greater by the preexisting astigmatism, an award of compensation for total loss of vision payable by the employer and not involving second injury fund was not inappropriate. The trial court in the present action did not err in sustaining that conclusion.

The defendants further contend that the statute requires them to compensate the plaintiff for something which they did not cause, namely, the preexisting astigmatism. The method of compensating claimants has been determined by the legislature and is an exercise of legislative discretion. It is evident that the legislature recognized the concept that all men having a common disability suffer the same handicap in pursuing the normal activities of life. The defendants may disagree with that proposition, but the legislature's determination cannot be said to be irrational or irresponsible social legislation.[3]

The defendants further claim that the present legislation separates employees into two classes, and

---

[3] "It has been stressed repeatedly that the distinctive feature of the compensation system, by contrast with tort liability, is that its awards (apart from medical benefits) are made not for physical injury as such, but for 'disability' produced by such injury. The central problem, then, becomes that of analyzing the unique and rather complex legal concept which, by years of compensation legislation, decision, and practice, has been built up around the term 'compensable disability.'" 2 Larson, Workmen's Compensation Law § 57.10, p. 10-2.

based upon such classification, treats them differently and is, therefore, discriminatory. For a classification to withstand constitutional attack, it "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989. As we have previously noted, a principal object of our workmen's compensation legislation is to provide compensation for disabilities, as opposed to injuries. Thus, it is not impermissible class legislation to authorize payment of equal compensation awards to employees both with or without ante accident impairments, if they share a common disability following the accident. The claim lacks merit.

In his finding and award the commissioner found that all claims had been adjusted and compensation paid, except for the partial permanent loss of use of each eye, and that "[t]he sole issue at this hearing related to specific compensation for each eye and to the possible involvement of the second injury fund." Despite that finding, the defendants now claim that the commissioner should have taken into account weekly payments already made by them for other disabilities arising from the accident. They contend that such payments were intended by the legislature to be credited to them in calculating the first 104 weeks of compensation to be paid by the employer before the second injury fund assumes the remaining payments. The defendants appear to be claiming that the remedial objectives of the workmen's compensation act are restricted to accidents rather than to injuries. The short answer is that the second injury fund may become liable for

586

permanent disability to each part of the body covered by the act, with each disability to be considered a separate injury, notwithstanding the fact that more than one injury may arise out of the same accident. See *Olmstead* v. *Lamphier,* 93 Conn. 20, 22, 104 A. 488; *Franko* v. *Schollhorn Co.,* 93 Conn. 13, 17–18, 104 A. 485.

There is no error.

In this opinion the other judges concurred.