EDWARD B. PLESZ *v.* UNITED TECHNOLOGIES CORPORATION ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 2, 1977—decision released January 17, 1978

*Howard B. Field III,* with whom, on the brief, were *George A. Downing* and *Mark R. Perkell,* for the appellants (named defendants et al.).

*Robert W. Murphy,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant second injury and compensation assurance fund).

BOGDANSKI, J. The defendants United Technologies Corporation and Liberty Mutual Insurance Company, hereinafter the defendants, appealed to the Court of Common Pleas from a finding and award of the workmen's compensation commissioner at large, acting for the first district. From a judgment dismissing the appeal, the defendants appealed

to this court, assigning error in the court's refusal to correct the finding, in the conclusions reached, and in the overruling of their claims of law.

In his finding and award filed January 3, 1976, the compensation commissioner found the following: On October 31, 1969, while in the employ of the defendant employer, the plaintiff sustained an injury to his back, requiring surgery, and that injury arose out of and in the course of his employment. Previous to the accident of October 31, 1969, the plaintiff had incurred a prior physical impairment to his back, which had required three surgical procedures, and the plaintiff's present total disability is caused by both conditions and is materially and substantially greater than that which would have resulted from the second injury alone. The defendant insurer paid the plaintiff compensation, together with his medical expenses, from November 4, 1969, to date. On June 1, 1973, the defendants filed a claim with the custodian of the second injury and compensation assurance fund requesting that the fund assume responsibility under § 31-349 of the General Statutes.

In his finding the compensation commissioner also noted that the custodian of the second injury fund contended that the fund would not assume responsibility because the defendants failed to comply with the provisions of § 31-349 which sets forth the procedure to be followed by them to limit their liability. The commissioner found that the defendants failed to comply with the provisions of § 31-349 in not submitting a voluntary agreement or award, in not giving the custodian of the second injury fund notice of the pending case ninety days prior to the expiration of the 104-week period, and

in not filing with the commissioner and with the custodian a form indicating that all compensation and medical bills had been paid for a period of 104 weeks.

The commissioner then sustained the claims of the custodian and ordered the defendants to continue paying temporary total compensation and medical benefits to the plaintiff until it is shown that his incapacity has diminished or ceased.

On this appeal the defendants have assigned error in the failure of the trial court to correct the finding and award, in the court's conclusion that § 31-325 of the General Statutes, pertaining to waivers, did not apply, in the conclusion that a failure to give the ninety days notice was a bar to recourse to the second injury fund, and in the overruling of their claims of law.

As to the assignment of error addressed to the motion to correct, the motion to correct the finding and award as filed in this case was properly denied since it amounted to nothing more than a series of claims of law in the nature of an assignment of error rather than a motion to correct as required by the rules. Practice Book § 567G; see Maltbie, Conn. App. Proc. § 153. With respect to the error claimed as to the conclusion that § 31-325, pertaining to waivers, did not apply, the commissioner's finding that the accident of October 31, 1969, was not attributable in a material degree to the physical defects which had been waived fully supports that conclusion.[1] That factual finding has not been challenged. The claim lacks merit.

---

[1] Section 31-325 provides in pertinent part, that: "Whenever any person having a contract of employment . . . has any physical defect which imposes on his employer . . . a further or unusual hazard, it shall be permissible for such person to waive in writing

The principal issue on this appeal is whether the defendants' failure to comply with the provisions of § 31-349 acts as a bar to recourse against the second injury fund.

In workmen's compensation cases, the general rule is that where the accident, in and of itself, causes total disability, the accident is deemed to be the entire cause of the resultant total disability despite the existence of a preexisting impairment. *Jacques* v. *H. O. Penn Machinery Co.,* 166 Conn. 352, 356, 349 A.2d 847; *Fair* v. *Hartford Rubber Works Co.,* 95 Conn. 350, 354, 111 A. 193. The harshness of that rule has in recent times been mitigated by the adoption by most states of some form of second injury fund legislation by which employer liability can be limited in certain circumstances such as where an employee's preexisting impairment, whether by prior accident, disease or congenital causes, combines with a second injury resulting in a materially and substantially greater disability. *Jacques* v. *H. O. Penn Machinery Co.,* supra, 357.

" 'To prevent discrimination against handicapped workers, while providing the benefits of workmen's compensation to such workers, virtually every state has enacted some form of second injury fund legislation. . . . Such legislation is also designed to relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment.' *Jacques* v. *H. O. Penn Machinery Co.,* supra, 355–56. The current second injury legislation of this state, found in General Statutes §§ 31-349 through 31-355 is a product

. . . any rights to compensation . . . for any *personal injury* arising out of and in the course of his employment . . . which may be found by a commissioner to be *attributable* to a material degree to such physical defect. . . ." (Emphasis added.)

of evolution, having its roots in 1945 Public Acts, No. 188. The General Statutes presently provide that any covered employee who 'incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone . . . shall receive compensation for the entire amount of disability, including total disability, and necessary medical care, . . . notwithstanding the fact that part of such disability was due to prior accidental injury, disease, or congenital causes.' General Statutes § 31-349. 'By following the prescribed procedures, the employer may limit his liability to payments due in the first 104 weeks of the employee's second disability, after which the second injury fund assumes responsibility for compensation and medical treatment.' *Jacques* v. *H. O. Penn Machinery Co.*, supra, 358." *Lovett* v. *Atlas Truck Leasing*, 171 Conn. 577, 582, 370 A.2d 1061.

The procedures which the statute in effect in 1969 required the employer to follow in order to shift responsibility to the second injury fund were: "Ninety days prior to the expiration of the one-hundred-four-week period, the employer or his insurance carrier *shall* notify the custodian of the second injury fund of the pending case and *shall* furnish to said custodian a copy of the agreement or award, and *shall* make available to the custodian such medical reports as the custodian *shall* desire. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he *shall* file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation and

medical bills have been paid for the one-hundred-four-week period, and indicating thereon the date the custodian was notified of the pending case." General Statutes § 31-349.[2]   (Emphasis added.)

It is undisputed that the defendants began paying the plaintiff compensation on November 4, 1969. Ninety days prior to the 104-week period from that date would fall on August 4, 1971. For the employer to avail himself of the provisions of § 31-349 and to transfer responsibility to the second injury fund, the employer would be obliged to give the custodian of the second injury fund notice of the pending action, a copy of the agreement or award, and furnish the custodian with medical reports by August 4, 1971. Thereafter, on November 4, 1971, after the payment for the 104-week period had been completed, the employer would be obliged to file with the commissioner and with the custodian a form indicating that all compensation and medical bills have been paid. As previously noted, the commissioner expressly found that the defendants failed to comply with those statutory provisions.

The defendants in turn contend that notice of the pending action was given to the custodian on June 1, 1973; that the ninety-day notice provision was not mandatory; that if timely notice was not given that that would merely postpone the fund's obligation until the date of actual notice, which in this case was not given until June 1, 1973; with respect to the requirement of filing with the commissioner and

[2] The statute has, subsequent to October 31, 1969, been amended to include the following provision: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier must, within ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case . . . ." (1971 Public Acts, No. 447)

the custodian a form indicating that all payments and medical bills have been paid, the defendants expressly concede that such a filing is a condition precedent to the fund's assumption of liability, but claim that they complied by submitting a form to that effect as an exhibit at a hearing before the commissioner held either in 1973 or 1975.

We do not agree. There is nothing in the statute to suggest that the failure to comply with the ninety-day-notice provision would merely postpone the fund's obligation until the date such notice was actually given which, in this case, was untimely by almost two years. See *Vegliante* v. *New Haven Clock Co.*, 143 Conn. 571, 581, 124 A.2d 526; *Walsh* v. *A. Waldron & Sons*, 112 Conn. 579, 584, 153 A. 298. The object of the ninety-day statutory notice is to enable the fund to be apprised promptly of such a claim being made, to obtain a copy of the agreement or award and to have immediate access to all medical reports. Such information is essential to enable the fund to assess promptly its alleged liability and to establish immediately its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it. See *Menzies* v. *Fisher*, 165 Conn. 338, 343–45, 334 A.2d 452.

With respect to the post-104-week filing requirement: The offering of an exhibit at a subsequent hearing does not advantage the defendants. "Filing is accomplished by an actual delivery to the proper officer of the thing to be filed. *Piscitello* v. *Boscarello*, 113 Conn. 128, 131, 154 A. 168." *Rosenberg* v. *Planning Board*, 155 Conn. 636, 643, 236 A.2d 895. An offer of an exhibit at a quasi-judicial proceeding

does not constitute a filing as required by the statute. An exhibit is basically a piece of evidence intended primarily as a court record. Moreover, the exhibit cannot be considered compliance for an additional reason. The statute requires such a filing after the completion of payments for the 104-week period. The offer of the exhibit here occurred two to four years after it was due.

We conclude that the trial court did not err in dismissing the appeal.

There is no error.

In this opinion the other judges concurred.