PETER LEVANTI *v.* DOW CHEMICAL COMPANY ET AL.
(14070)

PETERS, C. J., CALLAHAN, COVELLO, HULL and BORDEN, Js.

Argued December 6, 1990—decision released March 19, 1991

*Lucas D. Strunk,* for the appellants (named defendant et al.).

*Richard L. Gross,* for the appellee (plaintiff).

HULL, J. The dispositive issue in this appeal is whether an employer may be required to pay specific indemnity workers' compensation benefits to an employee, pursuant to General Statutes § 31-349,[1] for a physical impairment caused by the combined effect of a compensable injury sustained during the course of employment by the employer and prior noncompensable injuries. The workers' compensation commissioner for the second district (commissioner) determined that

[1] General Statutes § 31-349 provides in pertinent part: "(a) The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. . . . Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. . . ."

the named defendant, Dow Chemical Company, was so liable and accordingly ordered the defendant insurer, Aetna Casualty and Surety Company,[2] to pay the plaintiff, Peter Levanti, an award of compensation benefits for a 15 percent back impairment. The compensation review division (review division) affirmed. The defendants appealed to the Appellate Court and we thereafter transferred the appeal to this court pursuant to Practice Book § 4023. We affirm.

The relevant facts are undisputed. In 1954 and in 1962, the plaintiff sustained injuries to his back during the course of his employment in the receiving department of Dow Chemical. Because our Workers' Compensation Act did not provide specific benefits for back impairment until 1967; see Public Acts 1967, No. 842, § 15, which amended General Statutes § 31-308 to provide specific benefits for back impairment; the plaintiff did not receive specific benefits for the injuries sustained in 1954 and 1962. Thereafter, the plaintiff was promoted to a position in Dow Chemical's traffic department that required minimal physical labor. In May, 1985, the plaintiff was returned to his previous position in the receiving department and on June 19, 1985, he sustained a third injury to his back during the course of his employment at Dow Chemical.[3]

Following the third injury, the plaintiff received workers' compensation benefits for total incapacity[4]

[2] Travelers Insurance Company and the Second Injury and Compensation Assurance Fund; see General Statutes § 31-349 et seq.; were also defendants in the plaintiff's action for workers' compensation benefits brought to the workers' compensation commission. Nevertheless, because they were not parties to this appeal, our reference herein to "the defendants" is to Dow Chemical Company and Aetna Casualty and Surety Company.

[3] On February 1, 1986, the plaintiff elected early retirement because he felt that he was no longer able to perform his job in the receiving department.

[4] General Statutes § 31-307 provides in pertinent part: "If any injury for which compensation is provided under the provisions of this chapter results

from Dow Chemical pursuant to a voluntary agreement that had been approved by the commissioner. After his back injury had reached maximum medical improvement, the plaintiff sought a specific award of workers' compensation benefits for permanent partial impairment of his back.[5] The defendants contested liability for the entire impairment, claiming that they were not liable for that portion of the impairment attributable to the earlier back injuries, since our Workers' Compensation Act did not provide specific indemnity benefits for back impairment either in 1954 or in 1962. In a finding and award, the commissioner determined that the plaintiff "ha[d] suffered a 15% permanent partial disability of the back as a result of the injury of June 19, 1985 which ha[d] been superimposed upon previous injuries or condition, the sum total of which ha[d] contrived to make the [plaintiff's] condition materially and substantially worse than had he suffered the injury of June 19, 1985 by itself alone" and that, therefore, under § 31-349, Dow Chemical was "liable for the full amount of the 15% permanent partial disability to the back." Accordingly, the commissioner ordered Aetna to pay the plaintiff seventy-eight weeks of compensation benefits. The defendants renewed their claim in the review division which affirmed the commissioner's finding and award.

---

in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury . . . ."

[5] At the time of the commissioner's award, General Statutes § 31-308 (b) provided in pertinent part: "With respect to the following-described injuries the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate set forth in section 31-309, or less than twenty dollars weekly . . . (13) for the loss of the use of the back, that number of weeks which the proportion of incapacity represents to the maximum of five hundred and twenty weeks. . . ."

The defendants claim that the commissioner's finding and award are unsupported by the evidence. This claim has two subparts. First, the defendants argue that because the evidence before the commissioner pertained solely to the plaintiff's physical impairment rather than to impairment of his earning capacity, the evidence was insufficient to support a finding that following the injury in 1985, the plaintiff had a "disability" within the meaning of § 31-349. The defendants next argue that the evidence was insufficient to sustain the commissioner's finding that the plaintiff's overall disability following his most recent injury was "materially and substantially worse" as a consequence of his previous injuries. We do not agree.

An award of workers' compensation benefits for permanent partial impairment of one's back is a specific indemnity award. See General Statutes § 31-308 (b); J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) pp. 151–54. "Specific benefits are benefits for the loss or loss of the use of specific body parts. See *Everett* v. *Ingraham,* 150 Conn. 153, 155, 186 A.2d 798 (1962)." *Morgan* v. *East Haven,* 208 Conn. 576, 584, 546 A.2d 243 (1988); see also *Panico* v. *Sperry Engineering Co.,* 113 Conn. 707, 710, 156 A. 802 (1931). " 'These [specific] benefits . . . are not paid as compensation for loss of earning power but to compensate the injured employee for the incapacity through life because of the loss or loss of use of the body member in question.' J. Asselin, supra, p. 151." *Morgan* v. *East Haven,* supra. Thus, "[c]ompensation in such cases is not dependent upon actual incapacity in whole or in part. *Franko* v. *Schollhorn Co.,* 93 Conn. 13, 104 Atl. 485 [1918]." *Dombrozzi* v. *Gross & Co.,* 112 Conn. 627, 629, 153 A. 780 (1931); see also J. Asselin, supra, pp. 151–54. In fact, "[p]ermanent partial schedule awards are based on medical condition after maximum improvement has been reached and ignore wage loss

entirely." 2 A. Larson, Workmen's Compensation Law § 57.13, p. 10-41. Nonetheless, "[a] limited schedule is not inconsistent with the earnings-impairment principle [of workers' compensation law], provided that the items included are such that the conclusive presumption of probable actual wage loss is realistic and not fictitious. In addition, the loss must be obvious enough so that the reason for indulging the presumption—administrative convenience and prevention of litigation—is also realistic." 2 A. Larson, supra, § 57.14 (a), p. 10-49.

In enacting the schedule of benefits set forth in General Statutes § 31-308 (b),[6] our legislature must have

[6] General Statutes § 31-308 (b) sets forth the following schedule of benefits: "(1) For the loss of the master arm at or above the elbow or the complete and permanent loss of the use of the master arm, three hundred and twelve weeks; for the loss of the other arm, at or above the elbow; or the complete and permanent loss of the use of the other arm, two hundred and ninety-one weeks; (2) for the loss of the master hand at or above the wrist, or the complete and permanent loss of the use of said hand, two hundred and fifty-two weeks, and for such loss of the other hand or the use of said hand, two hundred and thirty-two weeks; (3) for the loss of one leg at or above the knee, or the complete and permanent loss of the use of one leg, two hundred and thirty-eight weeks; (4) for the loss of one foot at or above the ankle, or the complete and permanent loss of the use of one foot, one hundred and eighty-eight weeks; (5) for the complete and permanent loss of hearing in both ears, one hundred and fifty-six weeks; (6) for the complete and permanent loss of hearing in one ear, fifty-two weeks; (7) for the complete and permanent loss of the sight of one eye, or the reduction in one eye to one-tenth or less of normal vision, two hundred and thirty-five weeks; (8) for the complete and permanent loss of, or loss of the use of, the thumb on the master hand, ninety-five weeks, for the thumb on the other hand, eighty-one weeks; (9) for the loss of, or the complete and permanent loss of the use of, a first finger, fifty-four weeks; (10) for the loss of, or the complete and permanent loss of the use of, a second finger, forty-four weeks; a third finger, thirty-one weeks; a fourth finger, twenty-six weeks; (11) for the loss of, or the loss of the use of, the great toe, forty-two weeks; (12) for the loss of, or the loss of the use of, any other toe, thirteen weeks. The loss of, or the loss of the use of, one phalanx of a thumb shall be construed as seventy-five per cent of the loss of the thumb, the loss of, or the loss of the use of, one phalanx of a finger shall be construed as fifty per cent of the loss of the finger; the loss of, or the loss of the use of, two

presumed that the losses therein affected earning capacity, because any other construction would suggest that the section was intended to provide compensation solely for the body part itself, comparable to a tort recovery. This construction would be inconsistent with our Workers' Compensation Act. "[W]orkers' compensation 'established almost a complete substitute for the common law of torts . . .' " since "the 'purpose of our Act . . . is to give to the employee . . . compensation for the loss of wages accruing from the employee's injury.' *Bassett* v. *Stratford Lumber Co.*, 105 Conn. 297, 303, 135 A. 574 (1926)." *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 540, 494 A.2d 555 (1985).

Furthermore, in remarking on the defendants' apparent confusion between general incapacity benefits and specific benefits, the review division implicitly concluded that an award of specific benefits does not require a showing of impairment of earning capacity because the probability of wage loss is presumed. This interpretation of the review division " 'warrants respect as the considered judgment of the govern-

phalanges of a finger shall be construed as ninety per cent of the loss of the finger; the loss of, or the loss of the use of, one phalanx of a great toe shall be construed as sixty-six and two-thirds per cent of the loss of the great toe; the loss of the greater part of a phalanx shall be construed as the loss of a phalanx, and shall be compensated accordingly; (13) for the loss of the use of the back, that number of weeks which the proportion of incapacity represents to the maximum of five hundred and twenty weeks. If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured person such a proportion of the sum herein provided for the total loss of, or the loss of the use of, such member or for incapacity or both as represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion."

mental agency vested with primary authority for enforcing our workers' compensation statutes.' *Felia* v. *Westport,* [214 Conn. 181, 188, 571 A.2d 89 (1990)], citing *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599, 522 A.2d 771 (1987); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 493, 362 A.2d 785 (1975)." *Ancona* v. *Norwalk,* 217 Conn. 50, 56, 584 A.2d 454 (1991).

The defendants have failed to show that evidence of loss or loss of use of a body part compensable under § 31-308 (b) is insufficient to sustain a finding of disability under our Workers' Compensation Act. We conclude, therefore, that the evidence of the plaintiff's back impairment was sufficient to sustain the commissioner's finding that the plaintiff had a disability within the meaning of § 31-349.

The defendants' second assertion is that even if the evidence supported a finding of disability, it was inadequate to sustain the commissioner's finding that as a result of the earlier injuries, the plaintiff's overall disability following the third injury was "materially and substantially worse than had he suffered the injury of June 19, 1985 by itself alone." See General Statutes § 31-349. The commissioner determined that each of the three injuries had caused a 5 percent impairment of the plaintiff's back for an overall 15 percent back impairment. The commissioner then concluded that because the earlier injuries together had caused a 10 percent impairment, two-thirds of the overall disability, the disability after the third injury was materially and substantially worse than it would have been had the earlier injuries not occurred. According to the defendants, because the commissioner merely compared the impairment percentages and did not find that the injuries had "combined and merged," there was an insufficient basis on which to determine that the

resultant disability was materially and substantially greater. We do not agree.

"It has always been accepted without question that the situation to which the Second Injury Fund applies consists of a *prior* noncompensable injury followed by and combining with a *subsequent* compensable injury." (Emphasis in original.) 2 A. Larson, supra, § 59.32 (g), p.10-488. Contrary to the defendants' assertion, the prior impairment need not combine with the compensable injury in any special way, but must merely add something to the overall disability before the fund can become liable. 2 A. Larson, supra, p. 10-472. Thus, evidence that the preexisting impairment has materially increased the claimant's overall disability is sufficient to warrant application of § 31-349. See *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 583, 370 A.2d 1061 (1976).

In this case, the commissioner determined that the prior injuries had caused a 10 percent back impairment while the third injury had caused a 5 percent back impairment for a total of 15 percent. The defendants do not challenge this finding. Because the earlier injuries increased the extent of the resultant disability by 200 percent, we conclude that the commissioner reasonably determined that the plaintiff's overall disability was materially and substantially greater as a result of the earlier injuries within the meaning of § 31-349.

The defendants claim that applying § 31-349 in cases such as this will lead to irrational results by imposing liability on employers for consequences a mere fraction of which are attributable to their employment. This claim is without merit.

Section 31-349 does not create liability. To the contrary, it is an apportionment statute that limits the liability of employers previously imposed. *Plesz* v. *United Technologies Corporation,* 174 Conn. 181, 186, 384 A.2d

363 (1978); *Lovett* v. *Atlas Truck Leasing,* supra, 582–83. According to the general rule of workers' compensation law, if an employee was injured during the course of his employment, an employer was liable to provide compensation for the full extent of the employee's disability, regardless of whether the disability was due, in part, to a preexisting condition or impairment. *Plesz* v. *United Technologies Corporation,* supra, 185; *Lovett* v. *Atlas Truck Leasing,* supra, 581–82.[7] Thus, "employers were often held liable for the full consequences of work-related accidents suffered by their employees, even though those consequences were aggravated by preexisting disabilities." *Jacques* v. *H.O. Penn Machinery Co.,* 166 Conn. 352, 356, 349 A.2d 847 (1974). The legislature, cognizant of the hardships posed by the general rule, including discrimination against handicapped workers and employer liability for consequences not attributable to their employment; *Plesz* v. *United Technologies Corporation,* supra; *Lovett* v. *Atlas Truck Leasing,* supra, 582; enacted § 31-349 to limit the employer's liability to 104 weeks of compensation in situations where a claimant's disability following a work-related injury is materially and substantially greater as a result of an earlier injury or previous condition.

In this case, because the award of compensation benefits was less than 104 weeks, the defendants had to pay the entire award. Nevertheless, if the resultant disability had warranted an award in excess of that amount, § 31-349 would have served to limit the defendants' liability. We conclude, therefore, that application of § 31-349 in cases such as this promotes rational results.[8]

---

[7] Contrary to the defendants' assertion, this rule was not limited to situations where the claimant suffered total as opposed to partial disability following the second injury. See *Jacques* v. *H.O. Penn Machinery Co.,* 166 Conn. 352, 356, 349 A.2d 847 (1974); *Hartz* v. *Hartford Faience Co.,* 90 Conn. 539, 543, 97 A. 1020 (1916).

[8] The following examples further illustrate the rational operation of General Statutes § 31-349. In scenario one, an employee sustains an injury dur-

The judgment is affirmed.

In this opinion the other justices concurred.

ing the course of his employment. The employee had a preexisting 50 percent back impairment and following the work-related injury, his back impairment is 51 percent. According to the general rule of workers' compensation law, the employer would have been liable to pay workers' compensation benefits for the entire 51 percent impairment; *Plesz* v. *United Technologies Corporation,* 174 Conn. 181, 185–86, 384 A.2d 363 (1978); *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 581–82, 370 A.2d 1061 (1976); however, § 31-349 applies in this case. Because the employee's total disability is materially and substantially greater as a result of his prior condition, the employer's liability is limited to payment of 104 weeks of benefits. Any further liability is allocated to the Second Injury Fund. General Statutes § 31-349. This apportionment of liability is rational because the greater increment of the total disability, 50 percent, was caused by a condition unrelated to the employee's present employment.

In scenario two, an employee sustains an injury during the course of his employment. This employee had a preexisting 1 percent back impairment and following the work-related injury, his back impairment is 51 percent. According to the general rule, the employer is liable to pay workers' compensation benefits for the entire 51 percent back impairment. *Plesz* v. *United Technologies Corporation,* supra; *Lovett* v. *Atlas Truck Leasing,* supra. There is no allocation to the Second Injury Fund pursuant to § 31-349, because it cannot be said that the employee's total disability is materially and substantially greater as a result of his preexisting condition. This result is rational because the greater increment of the total disability, 50 percent, was caused by the injury suffered while in the employer's employ.