RAMON HERNANDEZ *v.* GERBER GROUP ET AL.
(14372)

PETERS, C. J., SHEA, GLASS, COVELLO and SANTANIELLO, JS.

Argued February 13—decision released May 12, 1992

*David R. Bull,* for the appellants (named defendant et al.).

*Robert W. Murphy,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend* and *Kathleen R. Smith,* assistant attorneys general, for the appellee (defendant Second Injury and Compensation Assurance Fund).

PETERS, C. J. The dispositive issue in this appeal is whether the Second Injury and Compensation Assurance Fund (Fund), which under General Statutes § 31-349[1] assumes responsibility for compensation for injuries arising out of an employee's preexisting inju-

---

[1] At the time relevant to this appeal, General Statutes § 31-349 provided in pertinent part: "(a) The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. . . . Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. . . ."

ries, must pay for an employee's leg disability that is sustained as a result of treatment for a compensable heart disability. The defendant Fund appealed to the compensation review division from an order by the workers' compensation commissioner for the fourth district transferring liability to the Fund for an injury suffered by the plaintiff, Ramon Hernandez. The compensation review division sustained the Fund's appeal, and the employer, Gerber Group, and the employer's insurer, St. Paul Fire and Marine Insurance Company, appealed to the Appellate Court. We transferred the case to ourselves pursuant to Practice Book § 4023 and now reverse.

The parties stipulated to the following facts. On December 23, 1985, Hernandez suffered a myocardial infarction (heart attack) that arose out of and in the course of his employment. His employer's insurer acknowledged the compensability of the claim, and on December 16, 1987, issued a voluntary agreement, which was approved by the fourth district commissioner. On March 2, 1988, the Fund agreed to accept transfer of liability for the heart injury pursuant to General Statutes § 31-349 (a).[2] On March 24, 1988, the commissioner approved a voluntary agreement for 40 percent permanent partial disability of the heart for Hernandez.

In the course of receiving treatment for the heart injury, Hernandez underwent a cardiac catheterization. As a result of the catheterization, he sustained a per-

---

[2] The record in this case includes a letter from Hernandez' doctor, Lawrence Cohen, indicating that the narrowings of Hernandez' arteries "took years to develop and therefore clearly antedate the December 23, 1985 myocardial infarction." The timing of the heart attack, however, was related to his work activities on that date, which involved, inter alia, lifting a thirty pound can of sand every three minutes. The resulting disability, Cohen concluded, "was materially and substantially greater than it would have been by virtue of the work stress alone."

manent partial disability of the right leg. The employer's insurer acknowledged the compensability of the loss of the use of the leg, and issued a voluntary agreement that was approved by the commissioner on May 16, 1988. On March 2, 1989, Hernandez and the insurer agreed upon a 29 percent permanent partial disability of the leg, and the insurer's voluntary agreement to that effect was approved by the commissioner on March 20, 1989.

Thereafter, the insurer sought to transfer liability for the right leg disability to the Fund. The Fund refused to accept transfer of liability, because there was no preexisting disability of the leg. The compensation commissioner for the fourth district ordered the Fund to accept transfer of liability for the leg injury, finding that "the injury to, and resulting disability of the claimant's right leg is so inextricably woven into the claimant's myocardial infarction that it cannot be said to be a separate injury and cannot be considered apart from the myocardial infarction." The Fund appealed to the compensation review division, which reversed the fourth district commissioner's decision.

In their appeal to this court, the employer and the employer's insurer have raised two issues. Their principal contention is that the compensation review division should have concluded, as a matter of law, that § 31-349 imposed liability on the Fund in the circumstances of this case. Alternatively, they maintain that the decision rendered by the compensation review division should be overturned because it constituted an insupportable departure from the factual findings and conclusions of the compensation commissioner. Because we agree with the first of these contentions, we need not address the second.[3]

---

[3] The claim that the review division refused to accept the commissioner's factual findings necessarily has two parts. To the extent that the decision

The legislature's remedial purpose in enacting § 31-349 is well established. " ' "To prevent discrimination against handicapped workers, while providing the benefits of [workers'] compensation to such workers, virtually every state has enacted some form of second injury fund legislation. . . . Such legislation is also designed to relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment." *Jacques* v. *H. O. Penn Machinery Co.*, [166 Conn. 352, 355–56, 349 A.2d 847 (1974)].' " *Plesz* v. *United Technologies Corporation,* 174 Conn. 181, 185, 384 A.2d 363 (1978). Under § 31-349, the Connecticut second injury fund statute, "[i]f an employee who has . . . [a] permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone," the employer's obligation is limited to the first 104 weeks of the employee's disability. Thereafter, liability for all compensation for the injury shifts to the Fund.

---

of the compensation review division contradicted findings of fact of the commissioner for which there was support in the record, its decision would be untenable. "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted; internal quotation marks omitted.) *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988). The decision of the review division did not, however, dispute the commissioner's factual finding of a causal relation between Hernandez' heart injury and his leg injury. The review division held instead that, as a matter of law, *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 370 A.2d 1061 (1976), compelled the conclusion that such a causal relation could not be a basis for transferring liability to the Fund. Had this interpretation of *Lovett* been correct, the commissioner's conclusion would have "result[ed] from an incorrect application of the law to the subordinate facts," and it would have been appropriate for the review division to overturn that conclusion.

In denying the employer's claim in this case, the review division did not question the general rule that the Fund is liable for an employee's second work-related disability. It noted that this court, in *De la Pena* v. *Jackson Stone Co.,* 103 Conn. 93, 100, 130 A. 89 (1925), had described a compensable personal injury as including "the entire transaction to which the injury is traced, not only the operative causes but their effect on the body of the injured person." The review division read *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 370 A.2d 1061 (1976), however, as precluding liability in the circumstances of this case. We disagree with the review division's interpretation of *Lovett.*

As a result of a single accident, the claimant in *Lovett* sustained several severe injuries, including injuries to his eyes, back, teeth, mouth and jaws. The claimant had suffered from a preexisting astigmatism of both eyes. With respect to the eye injuries sustained in the accident, the commissioner awarded 235 weeks of compensation for total loss of vision in the left eye and ninety-three weeks of compensation for 40 percent loss of vision in the right eye. The commissioner did not transfer liability for any part of either eye injury to the Fund. The commissioner found that the injury to the left eye was sufficient to cause total loss of vision, and that the preexisting problem had not materially and substantially increased that loss of vision. The preexisting astigmatism was found to have made the injury to the right eye materially and substantially greater than that which would have resulted from the second injury alone, but because the employer would not pay 104 weeks of compensation for that injury, the Fund was found to have no liability.

The employer and its insurer in *Lovett* contended that, in calculating the 104 weeks required to be paid under § 31-349, they were entitled to a contribution from the Fund because they should have received credit

for weekly payments already made for other disabilities arising from the accident. We rejected this claim. "The defendants appear to be claiming that the remedial objectives of the workmen's compensation act are restricted to accidents rather than injuries. The short answer is that the second injury fund may become liable for permanent disability to each part of the body covered by the act, with each disability to be considered a separate injury, notwithstanding the fact that more than one injury may arise out of the same accident. See *Olmstead* v. *Lamphier,* 93 Conn. 20, 22, 104 A. 488 [1918]; *Franko* v. *Schollhorn Co.,* 93 Conn. 13, 17–18, 104 A. 485 [1918]." Id., 585–86.

The compensation review division understood our holding in *Lovett* to mean "that before transfer of liability for a body part disability, the employer must have paid one hundred four weeks of benefits attributable to that specific body part." The review division recognized that this would be a radical departure from preexisting law, but it believed that it was bound by *Lovett* to conclude that Hernandez' preexisting heart condition was an injury legally separate from the injury to his leg. The question before us, therefore, is whether *Lovett* has the draconian consequences attributed to it by the compensation review division.

To place our decision in *Lovett* in context, we must examine the two cases on which *Lovett* relied for its holding barring the liability of the Fund. Predating the existence of the Fund,[4] these cases involved unsuccessful attempts by employers to use the extensiveness of their employee's injuries as a basis for limiting their liability to the employee. In *Olmstead* v. *Lamphier,* supra, this court rejected an employer's claim that, because it had paid for the loss of its employee's leg in an accident, it should not also be liable for the par-

---

[4] See Public Acts 1945, No. 188.

tial incapacity of the employee's shoulder arising out of the same accident. "The injury to the shoulder was a distinct injury resulting in partial incapacity; the loss of the leg was also a distinct injury resulting in partial incapacity. For each injury . . . the injured employee was entitled to compensation. The fact that each injury resulted from one accident did not make of these a single injury. Nor did the [Workmen's Compensation] Act intend that compensation for the loss of a member should be in lieu of all compensation for other injuries resulting from one accident." Id., 22. In *Franko* v. *Schollhorn Co.,* supra, an employee who had suffered lacerations of two fingers in an accident, both of which were eventually amputated, was permitted by this court to recover both the amount specified by the workers' compensation statute for the incapacity of the fingers and the amount specified by the statute for their loss. This court reasoned that "when the loss of the member is preceded by a long incapacity while efforts are made to heal and cure the injury, the injured employee has suffered far more than from the mere loss of the member. Compensation for the loss of the member will not compensate him for the period of incapacity preceding the loss of the member. The just rule of compensation will give compensation for the period of total incapacity as well as for the loss of the member." Id., 19. Both cases recognize that injuries arising out of the same accident may nonetheless be separate and distinct.

Our decision in *Lovett,* like those in the cases cited in *Lovett,* recognizes that a single accident may cause a worker to suffer multiple separate injuries. In *Lovett,* only the injury to the right eye was materially increased by the worker's preexisting condition. An employer is entirely liable for injuries arising out of and in the course of employment when these injuries are not caused or materially exacerbated by a preexisting con-

dition. *Levanti* v. *Dow Chemical Co.,* 218 Conn. 9, 18–19 n.8, 587 A.2d 1023 (1991); *Lovett* v. *Atlas Truck Leasing,* supra, 581–84. *Lovett* stands for the proposition that the mere fact that employment-related injuries are numerous and caused by a single accident does not permit the employer to transfer liability to the Fund for all of them, when only one of them is materially exacerbated by a preexisting condition and less than 104 weeks of compensation have been paid for that injury.

In this case, the employer has made the showing of causal connection between preexisting condition and subsequent injury that was lacking in *Lovett*. Although all of the injuries in *Lovett* had the same cause, that cause was unrelated to the preexisting condition, and the preexisting condition entered the chain of causation only with respect to the injury to the right eye. In the present case, on the other hand, the preexisting condition was at the beginning of the causal chain: Hernandez had a heart condition that, in conjunction with his work assignment, led to a myocardial infarction, treatment of which led to a leg injury. As a factual matter, the requisite causal linkage therefore existed between preexisting disability and subsequent injury, permitting assignment of liability for the subsequent injury to the Fund.

The Fund was established to provide disincentives for discrimination against workers with disabilities. This case illustrates the wisdom of the legislature's policy of requiring the Fund to assume liability for injuries that are causally related to preexisting disabilities. If persons with a history of heart trouble are at risk for developing leg problems, and the Fund did not pay for those leg problems, it would be rational for employers to discriminate against workers with a history of heart trouble, and employers who did not so discriminate would be unfairly disadvantaged. That would be precisely the result that the Fund was designed to

prevent. " 'A statute is not to be interpreted to thwart its purpose.' *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978)." *Freeman* v. *Alamo Management Co.,* 221 Conn. 674, 684, 607 A.2d 370 (1992). The purpose of the Fund is to relieve employers from having to bear the cost of preexisting medical conditions. That purpose would be thwarted if employers were required to bear the cost of causally related sequelae of preexisting medical conditions.

The decision is reversed and the case is remanded to the compensation review division with direction to affirm the decision of the compensation commissioner.

In this opinion the other justices concurred.