JOSEPH FIMIANI *v.* STAR GALLO DISTRIBUTORS,
INC., ET AL.
(AC 16698)

Landau, Schaller and Hennessy, Js.

Argued December 4, 1997—officially released April 21, 1998

*Richard R. Hine,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough* and *Anthony Jannotta,* assistant attorneys general, for the appellant (defendant second injury fund).

*David D. Chapman,* for the appellees (named defendant et al.).

*Opinion*

HENNESSY, J. The second injury fund (fund) appeals from the workers' compensation review board (board) decision reversing the trial commissioner's partial transfer of liability to the fund pursuant to General Statutes § 31-349 (b).[1] The board held that the plaintiff's entire disability, which developed after he suffered a second injury, even though made worse by a prior injury, is transferable to the fund. On appeal, the fund contends that only that portion of the disability that is attributable to the second injury is transferable. We reverse the decision of the board.

The pertinent facts and procedural history are as follows. At all times relevant to this appeal, Joseph Fimiani was an employee of Star Gallo Distributors, Inc. (Star Gallo). On January 6, 1987, Fimiani sustained a work-related back injury. Nationwide Insurance Company (Nationwide) was Star Gallo's workers' compensation carrier on that date and accepted liability for this injury by issuing a voluntary agreement. On November

---

[1] General Statutes § 31-349 (b) provides in relevant part: "The employer by whom the employee is employed at the time of the second injury, or its insurer, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. Failure on the part of the employer or an insurer to comply does not relieve the employer or insurer of its obligation to continue furnishing compensation under the provisions of this chapter. . . . If the claim is accepted for transfer, the custodian shall file with the workers' compensation commissioner for the district in which the claim was filed, a form indicating that the claim has been transferred to the Second Injury Fund and the date that such claim was transferred and shall refund fifteen hundred dollars of the notification fee to the self-insured employer or the insurer, as applicable. . . . If the custodian rejects the claim of the employer or its insurer, the question shall be submitted by certified mail within thirty days of the receipt of the notice of rejection by the employer or its insurer to the commissioner having jurisdiction, and the employer or insurer shall continue furnishing compensation until the outcome is finally decided. . . . If the employer or insurer prevails, or if the custodian accepts the claim all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or insurer by the Second Injury Fund."

30, 1987, Fimiani sustained another work-related back injury. Liberty Mutual (Liberty) accepted liability by issuing a voluntary agreement[2] because it was Star Gallo's workers' compensation carrier at the time of the second injury.

The workers' compensation carriers later disputed the cause of the second injury. Liberty contended that the injury was a recurrence[3] of the first injury thereby making Nationwide responsible. Nationwide contended that it was a "second injury" as defined by General Statutes § 31-275[4] thereby making Liberty responsible. This dispute was the subject of informal hearings before a commissioner on February 3, March 2, and July 7, 1988, and January 10, 1989. After various conflicting medical opinions were presented, the parties entered into a compromise agreement whereby Nationwide agreed to pay 75 percent of the benefits and Liberty agreed to pay 25 percent. This voluntary agreement was accepted by the commissioner on November 13, 1989.

Thereafter, Liberty and Nationwide requested transfer of the liability for the second injury to the fund. The fund agreed to accept transfer of liability pursuant to § 31-349 only as to the percentage of benefits that Liberty was responsible for pursuant to its voluntary agreement with Nationwide. The transfer to the fund came before the third district of the workers' compensation commission, where a formal hearing was held

[2] Liberty paid Fimiani for a 20 percent permanent partial disability pursuant to the approved voluntary agreement.

[3] This issue is a question of fact for the commissioner. "Whether claimant sustained a relapse or recurrence of a previous compensable injury is a question determinable by the trial commissioner. . . . His conclusions will not be disturbed unless contrary to law, without evidence or based on unreasonable or impermissible factual inferences." (Citations omitted.) *Hehl v. Kimberly Clark Corp.*, 8 Conn. Workers' Comp. Rev. Op. 38, 39 (1990).

[4] General Statutes § 31-275 (23) provides: " 'Second injury' means an injury, incurred by accident, repetitive trauma, repetitive acts or disease arising out of and in the course of employment, to an employee with a previous disability."

before a commissioner on July 12 and November 9, 1994.

The commissioner issued a ruling on February 14, 1995, determining that the January 6, 1987 injury was a substantial factor in Fimiani's total disability resulting from the November 30, 1987 injury and ordered the fund to administer the claim.[5] The commissioner approved the transfer of Liberty's 25 percent liability to the fund and concluded that Nationwide should continue to be liable for 75 percent of the total disability. The commissioner based that apportionment of liability on the agreement, with which both insurance companies had complied.

Nationwide appealed that decision to the board alleging that the commissioner had improperly apportioned liability and, in the alternative, if apportionment was appropriate under the statutory scheme, by relying on the voluntary agreement rather than on the medical evidence to determine apportionment. The board reversed the commissioner's ruling and concluded that on a second injury resulting in a disability, the fund is liable for all benefits due to the plaintiff without regard to the percentage of the disability attributable to the first or second injury. One commissioner dissented arguing that the board's recent decision in *Lundquist v. Parkway Pavilion*, 15 Conn. Workers' Comp. Rev. Op. 7 (1995), was the proper interpretation of § 31-349 and should be upheld. We agree.

As a preliminary matter, it is important to note the precedential value of opinions of the commissioners of the worker's compensation review board. "General Statutes § 31-278 sets forth the powers and duties of

---

[5] The commissioner ordered the fund to reimburse Liberty for 25 percent of the benefits paid to the plaintiff after the one hundred fourth week of payments and Nationwide to reimburse Liberty for 75 percent of benefits paid after the one hundred fourth week of payment.

commissioners. Pursuant to that section, commissioners 'shall have all powers necessary to enable [them] to perform the duties imposed upon [them] by the provisions of [the Workers' Compensation Act]' . . . ." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 444, 705 A.2d 1012 (1997). "The agency's practical construction of the statute, if reasonable, is high evidence of what the law is." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 120, 584 A.2d 1172 (1991). "We accord great deference to the construction given to [§ 31-349] by the commissioner and the review division because they are both charged with its enforcement." *Crochiere* v. *Board of Education*, 227 Conn. 333, 354, 630 A.2d 1027 (1993). Furthermore, "[o]ur review of an agency's decision on questions of law is limited by the traditional deference that we have accorded to that agency's interpretation of the acts it is charged with enforcing." *Police Dept.* v. *State Board of Labor Relations*, 225 Conn. 297, 300, 622 A.2d 1005 (1993).

The board reasoned that the phrase "all responsibility for compensation" in § 31-349 unambiguously includes liability for the full disability of an injured employee. In so doing, it reversed its prior decision in *Lundquist* and held the fund liable for the plaintiff's entire disability rather than the percentage attributable to the second injury. We agree with the dissenting commissioner that there is no support for imposing a greater liability on the fund than what would be imposed on a similarly situated employer. Moreover, apportionment of liability is appropriate when there are two separate compensable injuries that contribute to the total disability. *Jolicoeur* v. *L.H. Duncklee Refrigeration, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 24, 27 (1995), citing *Mund* v. *Farmers' Cooperative, Inc.*, 139 Conn. 338, 341, 94 A.2d 19 (1952).

The general rule in workers' compensation law is that an employer is liable to provide compensation for the full extent of an employee's disability, regardless of whether the disability is due in part to a preexisting condition or impairment. *Levanti* v. *Dow Chemical Co.*, 218 Conn. 9, 18, 587 A.2d 1023 (1991). Because of the hardships imposed by this rule, the legislature has enacted apportionment statutes such as General Statutes § 31-299b, applicable to occupational trauma and repetitive injury cases, and § 31-349, applicable where two separate traumatic injuries have occurred. In addition, liability for a disability caused by injuries which are "equal, concurrent and contributing causes" may be apportioned under the common-law tort theory of causation set forth in *Mund* v. *Farmers' Cooperative, Inc.*, supra, 139 Conn. 341. See *Jolicoeur* v. *L.H. Duncklee Refrigeration, Inc.*, supra, 14 Conn. Workers' Comp. Rev. Op. 27.

When a worker covered by the Workers' Compensation Act suffers a work-related injury, evidence that a preexisting impairment has materially increased the plaintiff's overall disability is sufficient to warrant application of § 31-349. *Lovett* v. *Atlas Truck Leasing*, 171 Conn. 577, 583, 370 A.2d 1061 (1976). Further, § 31-349 "is an apportionment statute that limits the liability of employers previously imposed. *Plesz* v. *United Technologies Corporation*, 174 Conn. 181, 186, 384 A.2d 363 (1978); *Lovett* v. *Atlas Truck Leasing*, supra, 582–83." *Levanti* v. *Dow Chemical Co.*, supra, 218 Conn. 17–18.

The question presently before us is whether § 31-349 requires that liability for the percentage of disability attributable to the second injury be transferred to the fund or whether total responsibility for the disability must be assumed by the fund. We conclude that the fund is liable only for that percentage of the disability attributable to the second injury. To hold otherwise would be contrary to the purpose of the statute.

Here, the commissioner concluded that the plaintiff's first injury substantially increased his overall disability. Therefore, § 31-349 applies. We interpret § 31-349 as providing that after 104 weeks the fund shall be responsible for all compensation and medical treatment attributable to the second injury "less any compensation payable or paid with respect to the previous disability." The use of the phrase "less any compensation payable" indicates that the legislature envisioned that benefits due to the plaintiff from the first injury would continue after transfer and be deducted from the benefits received from the second injury. Accordingly, the fund would not take on that cost.

The fund was established to protect the employer from liability for the total disability resulting from an injury made worse because of an existing prior injury. *Levanti* v. *Dow Chemical Co.*, supra, 218 Conn. 17–18. The underlying purpose in establishing the fund was to encourage the hiring and retention of employees who had been injured in the course of their employment. Id. There is nothing in the statute that suggests that the fund was established to relieve the employer of responsibility for an initial injury simply because the employee suffered a second injury.

The employer or its insurer must remain responsible for the percentage of the compensation and medical treatment for the total disability attributable to the first injury. To relieve the employer or its insurer from liability for an injury for which it is responsible under the Workers' Compensation Act and to transfer that liability to the fund when a second injury occurs violates the underlying purpose of the statute.

We conclude that in cases where an employee has suffered two separate compensable injuries that have contributed to cause a disability, and liability for that disability can be apportioned between the two injuries

by the trial commissioner, the apportionment may also be extended to the liability imposed on the fund by § 31-349.

In this case, the commissioner ordered the fund to administer the payments to the plaintiff and further ordered that Nationwide reimburse the fund for 75 percent of the liability and that the fund reimburse Liberty for 25 percent of the liability. The apportionment by the commissioner was made on the basis of the voluntary agreement between the two insurers regarding liability and was improper. The commissioner should have apportioned liability between the first and second injury on the basis of all of the evidence, including the medical reports. See generally General Statutes § 31-349. An agreement between the insurers is not in and of itself reliable evidence to be used as a measurement for the division of liability between the two injuries. The commissioner should have relied to some extent on medical testimony.[6]

When the agency is reversed and it appears as a matter of law that there was only one single conclusion that it could reasonably reach, this court may direct the agency to take that action on remand. See *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 153, 365 A.2d 387 (1976). We find that this is not such a case. Further proceedings before the commissioner are necessary to determine the proper apportionment.

---

[6] "In a workers' compensation case, the claimant has the burden of proving that he has suffered a compensable injury, and that this injury at least significantly contributed to any alleged disability. *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 151, [291 A.2d 743] (1972); *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 41–42, [668 A.2d 1346] (1996); *Minneman* v. *Norwich Board of Education*, 2294 CRB-2-95-2 (Dec. 13, 1996). In a case such as the one at bar, proof of such a relationship is contingent upon expert medical testimony. *Murchison* [v. *Skinner Precision Industries, Inc.*], supra, 152." *Keenan* v. *Union Camp Corp.*, 16 Conn. Workers' Comp. Rev. Op. 174, 175 (1997).

The decision of the compensation review board is reversed and the case is remanded with direction to remand the matter to the trial commissioner for further proceedings to determine the percentage of liability attributable to each injury.

In this opinion the other judges concurred.