ROBERT CIVARDI *v.* CITY OF NORWICH ET AL.
(14982)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued September 22—decision released November 8, 1994

*Richard S. Bartlett,* for the appellants (named defendant et al.).

*Nancy R. Sussman,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant Second Injury and Compensation Assurance Fund).

KATZ, J. The sole issue on appeal is whether the named defendant, the city of Norwich, by properly transferring its obligation to pay for the "compensation and medical treatment" of its injured employee, the plaintiff, Robert Civardi, to the defendant second injury fund (fund) under General Statutes (Rev. to 1983) § 31-349,[1] thereby also transferred its responsibility

---

[1] General Statutes (Rev. to 1983) 31-349 provides: "COMPENSATION FOR SECOND DISABILITY. PAYMENT OF INSURANCE COVERAGE FOR TOTALLY INCAPACITATED PERSONS. The fact that an employee has suffered a previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such

under General Statutes (Rev. to 1983) § 31-284b,[2] to pay for Civardi's insurance benefits. In its appeal from

disability was due to a prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier must, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire. Failure on the part of the employer or the carrier to comply does not relieve the employer or carrier of its obligation to continue furnishing benefits under the provisions of this chapter. In the event the custodian shall reject the claim of the employer and its insurer, the question shall be submitted to the commissioner having jurisdiction, as promptly as possible, and the employer or carrier shall continue furnishing benefits until the outcome is finally decided, and if the employer or carrier prevails all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or carrier by the second injury fund. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation and medical bills have been paid for the one-hundred-four-week period, and indicating thereon the date the custodian was notified of the pending case. Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. . . . In any case where workers' compensation payments to an individual for total incapacity under the provisions of section 31–307 continue for more than one hundred four weeks, the costs of accident and health insurance or life insurance coverage required under section 31-284b, shall be paid out of the second injury fund after the one hundred fourth week. Employers shall notify the custodian of the second injury fund within sixty days of the expiration of the one-hundred-four-week period that such coverage is required."

Prior to a technical amendment to the Workers' Compensation Act in 1991, the second injury fund was officially titled the "second injury and compensation assurance fund." See Public Acts 1991, No. 91-207. Thus, although this opinion refers only to the "second injury fund," any reference to the second injury fund prior to the 1991 amendment impliedly refers to what was then officially known as the "second injury and compensation assurance fund."

[2] General Statutes (Rev. to 1983) § 31-284b provides: "EMPLOYER TO CON-TINUE INSURANCE COVERAGE OR WELFARE PLAN PAYMENTS FOR EMPLOY-

the decision of the workers' compensation review board denying its request to transfer to the fund its obligations under § 31-284b, Norwich maintains that the transfer of a case to the fund pursuant to § 31-349 simultaneously creates an obligation on the part of the fund to continue § 31-284b benefits as "compensation." We disagree.

EES ELIGIBLE TO RECEIVE WORKERS' COMPENSATION. USE OF SECOND INJURY FUND. (a) In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer, as defined in section 31-275, who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare plan, as defined in section 31-53, shall provide to such employee equivalent insurance coverage or welfare plan payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury.

"(b) Any employer may provide such equivalent accident and health or life insurance coverage or welfare fund payments or contributions by: (1) Insuring his full liability under this act in such stock or municipal companies or associations as are or may be authorized to take such risks in this state; (2) creating an injured employee's plan as an extension of any existing plan for working employees; (3) self-insurance; or (4) by such combination of the above-mentioned methods as he may choose.

"(c) In the case of an employee welfare fund, an employer may provide such equivalent protection by making payments or contributions for such hours of contributions established by the trustees of the employee welfare fund as necessary to maintain continuation of such insurance coverage when such amount is less than the amount of regular hourly or weekly contributions for full-time employees.

"(d) In any case where workers' compensation payments to an individual for total incapacity under the provisions of section 31-307 continue for more than one hundred four weeks, the cost of such accident and health insurance or life insurance coverage after the one hundred fourth week shall be paid out of the second injury fund in accordance with the provisions of section 31-349.

"(e) Such accident and health insurance coverage may include but shall not be limited to coverage provided by insurance or directly by the employer for the following health care services: Medical, surgical, dental, nursing and hospital care and treatment, drugs, diagnosis or treatment of mental conditions or alcoholism, and pregnancy and child care."

The following facts are undisputed. On August 12, 1983, Civardi sustained an injury to his back while in the course of his employment with Norwich. Because this 1983 injury aggravated preexisting injuries to his back, Norwich paid Civardi workers' compensation disability benefits through July 23, 1986, pursuant to a voluntary agreement, as provided for by General Statutes (Rev. to 1983) § 31-296.[3] As of July 24, 1986, pursuant to § 31-349, Norwich transferred to the fund its responsibility to pay to Civardi any remaining liability for weekly indemnity payments.[4] Norwich has, however, continued to date to pay Civardi's health insurance benefits as required by § 31-284b.

---

[3] General Statutes (Rev. to 1983) § 31-296 provides in relevant part: "VOLUNTARY AGREEMENTS. If an employer and an injured employee, or in case of fatal injury his legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. He shall retain the original agreement, with his approval thereof, in his office and, if an application is made to the superior court for an execution, he shall, upon the request of said court, file in the court a certified copy of the agreement and his statement of approval thereof. Before discontinuing payment on account of total or partial incapacity under any such agreement, the employer, if it is claimed by or on behalf of the injured person that his incapacity still continues, shall notify the commissioner and the employee of the proposed discontinuance of such payments, with the date of such proposed discontinuance and the reason therefor, and, such discontinuance shall not become effective unless specifically approved in writing by the commissioner."

Norwich paid Civardi temporary permanent disability benefits, as provided for by General Statutes § 31-308, pursuant to a voluntary agreement for the period ending October 21, 1984. On December 15, 1986, Civardi settled all his outstanding demands for compensation against Norwich for the period from October 21, 1984, to July 23, 1986.

[4] Since the transfer to the fund, Civardi has also received additional benefits for permanent partial disability pursuant to General Statutes § 31-308a.

At a hearing before a workers' compensation commissioner on December 3, 1991, Norwich disputed its obligation to pay Civardi's § 31-284b insurance benefits for the period of time following July 24, 1986, arguing that it had transferred to the fund, pursuant to § 31-349, not only its liability for indemnity payments, but also its responsibility to pay for Civardi's § 31-284b insurance benefits. Rejecting Norwich's argument, the commissioner concluded that § 31-349 did not transfer to the fund Norwich's obligation to pay Civardi's § 31-284b benefits. Following an appeal pursuant to General Statutes §§ 31-280b (b)[5] and 31-301 (b),[6] the compensation review board concluded that the transfer of § 31-284b benefits pursuant to § 31-349 may occur only after 104 weeks of total disability, and that Civardi was not totally disabled. Pursuant to General Statutes § 31-301b,[7] Norwich appealed that decision to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We hold that § 31-284b benefits are not

---

[5] General Statutes § 31-280b provides in relevant part: "(b) The board shall review appeals of decisions made by compensation commissioners pursuant to this chapter. The chief shall annually select two compensation commissioners to sit with him to hear such appeals for a term of one year, except that no commissioner may sit in review of an award or decision rendered by him. The chief may select a third compensation commissioner to sit on the board if one of the board members is disqualified or temporarily incapacitated from hearing the matter under review."

[6] General Statutes § 31-301 (b) provides: "The appeal shall be heard by the compensation review board as provided in section 31-280b. The compensation review board shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the compensation review board may hear additional evidence or testimony."

[7] General Statutes § 31-301b provides: "APPEAL OF DECISION OF COMPENSATION REVIEW BOARD. Any party aggrieved by the decision of the compensation review board upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review board to the appellate court."

"compensation" within the meaning of General Statutes (Rev. to 1983) § 31-349 and therefore affirm.[8]

We begin our analysis with a discussion of the fund's history and the purpose underlying its enactment. Connecticut, like most states, established the fund primarily to foster employment of individuals with an existing disability. See *Hernandez* v. *Gerber Group*, 222 Conn. 78, 82, 608 A.2d 87 (1992). "To prevent discrimination against handicapped workers, while providing the benefits of [workers'] compensation to such workers, virtually every state has enacted some form of second injury fund legislation. . . . Such legislation is also designed to relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment." (Internal quotation

---

[8] We use Civardi's date of the injury in determining the rights and obligations as between the parties. *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988). This rule dates back to 1916 and has been applied consistently to all nonprocedural aspects of a case. Accordingly, we examine the statutory authority that existed in 1983, in resolving the substantive issues before us. Id.

Although not commented upon by the parties, we note that in 1991, the legislature revised the Workers' Compensation Act. As one legislator remarked: "The bill before us is the product of two years of hard work by the Law Revision Committee, the Workers' Compensation Commission, members of this Chamber and others to do a complete and total . . . rewrite . . . of the Workers' Compensation Statutes as we know them today." 34 H.R. Proc., Pt. 5, 1991 Sess., p. 1959, remarks of Representative Joseph A. Adamo. As part of this revision, the definitions contained within General Statutes § 31-275 of the Workers' Compensation Act were greatly expanded. Section 31-275 (4) now provides that "[c]ompensation" means "benefits or payments mandated by the provisions of this chapter, including, but not limited to . . . payments made under the provisions of section 31-284b . . . ." There is nothing in the legislative history, however, to indicate even remotely that this provision was intended to apply to employees previously injured, and thereby to depart from the date of the injury rule. See *Iacomacci* v. *Trumbull*, supra, 209 Conn. 224. We therefore need not decide, in the absence of any such claim before us, whether § 31-275 (4) constitutes an express statement by the legislature of its intent that § 31-284b benefits transfer to the fund upon a § 31-349 transfer of compensation for those employees injured after the date of its passage.

marks omitted.) Id. Furthermore, the combined effect of a successive injury to someone with a preexisting disability can far exceed the combined allowances for each injury existing separately.[9] Therefore, under § 31-349, the employer by whom the employee is employed at the time of the second injury must pay all wages, benefits and covered medical costs only for the first 104 weeks of disability. Thereafter, pursuant to § 31-349, liability is transferred and all responsibility for "compensation and medical treatment" rests with the custodian of the fund.

Mindful of this history, we have cautioned that "[p]ayment of an award from a special fund such as the second injury and compensation assurance fund, which was established, inter alia, to assist in the payment of compensation awarded to handicapped and disadvantaged workers; General Statutes §§ 31-349—31-355; see *Everett* v. *Ingraham,* 150 Conn. 153, 158, 186 A.2d 798 [1962]; should be made only in accordance with express statutory authority; 101 C.J.S., Workmen's Compensation, § 837 [1958]; in order to protect that special fund and prevent unwarranted diversions of it from the specific purpose for which it was created." *Going* v. *Cromwell Fire District,* 159 Conn. 53, 61, 267 A.2d 428 (1970). The absence of any such express statutory authority therefore undermines the claim that the fund must assume liability for Civardi's § 31-284b insurance benefits as a part of the § 31-349 transfer of liability for "compensation."

Our resolution of this issue is further supported by the legislative history of § 31-284b. It is well established that in discerning legislative intent, we consider the statute's specific language, the legislative policy that

---

[9] An obvious example is the worker who is blind in one eye. Certainly an injury to his remaining eye is a far greater disability than the combined allowance for each injury existing separately. A. Sevarino, Connecticut Workers' Compensation After Reforms (1994) p. 85.

the statute was designed to implement, the history surrounding the statute's enactment and the statute's relationship to existing legislation. See *Lauer* v. *Zoning Commission*, 220 Conn. 455, 459–60, 600 A.2d 310 (1991). This exercise leads us to conclude that the expanded definition of "compensation" proffered by Norwich would exceed the legislative intent and place an undesired and unanticipated burden on the fund.

The legislature enacted § 31-284b following the decision in *Stone & Webster Engineering Corp.* v. *Ilsley*, 518 F. Sup. 1297 (D. Conn. 1981), that General Statutes (Rev. to 1981) § 31-51h[10] was unconstitutional.[11] In *Ilsley*, the United Stated District Court ruled that by impermissibly regulating the duration of payments made by an employer to a jointly administered employee union welfare fund and altering an employer's obligations pursuant to negotiated benefit plans, § 31-51h interferred with federal regulation under the Employee Retirement Income Security Act (ERISA). Id., 1300. Because federal lawmakers had clearly expressed in ERISA that federal law preempted the application of state laws in these areas, the court concluded that § 31-51h unconstitutionally intruded into the field.[12] Id.,

---

[10] General Statutes (Rev. to 1981) § 31-51h provides in pertinent part: "(a) No employer . . . shall cancel or withhold accident and health insurance or life insurance coverage of any employee or his dependents or cease to make payments or contributions at the regular hourly or weekly rate for full-time employees for each week of disability to an employee's welfare fund as defined in subsection (h) of section 31-53 while the employee is eligible to receive or is receiving workers' compensation payments pursuant to chapter 568 . . . ."

[11] The United States District Court's decision was subsequently affirmed. *Stone & Webster Engineering Corp.* v. *Ilsley*, 690 F.2d 323 (2d Cir. 1982), aff'd sub nom. *Arcudi* v. *Stone & Webster Engineering Corp.*, 463 U.S. 1220, 103 S. Ct. 3564, 77 L. Ed. 2d 1405 (1983).

[12] The intrusion into this federally legislated field violated the constitution of the United States, article six, clause 2, which provides in relevant part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the

1302. The District Court noted, however, that the state law might have avoided ERISA preemption if the law had imposed obligations on employers only as part of the workers' compensation regime. Id., 1301, citing 29 U.S.C. § 1003 (b) (3). In 1982, pending the appeal in *Ilsley*, Connecticut lawmakers, aware that the District Court opinion might be affirmed, and in an effort to fall within the exception, attempted to insulate the obligations flowing from § 31-51h against constitutional challenge by placing them within the Workers' Compensation Act.

The legislative history makes clear that § 31-284b was drafted to express the obligations then currently stated in § 31-51h. As stated in the Senate debate: "What we are doing here is taking the exact same language and moving it into workers' compensation statutes. There is no change in benefits. As I said before, there is no change in the way in which we are dealing with it. We feel that if we move it into the workers' [compensation] statutes that we would meet some of the problems that the court has already pointed out." 25 S. Proc., Pt. 4, 1982 Sess., p. 1171, remarks of Senator Michael J. Skelley. Even those who opposed the passage of the new act pending a definitive ruling from the United States Court of Appeals for the Second Circuit shared the view that the act did not change any statutory obligations. They argued that: "[b]ecause the obligations which Bill 345 proposed are identical to

Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

"[T]he supremacy clause mandates that federal law overrides, i.e., preempts, any state regulation where there is an actual conflict between the two sets of legislation such that both cannot stand, for example, if federal law forbids an act which state legislation requires. Moreover, where Congress acts pursuant to a plenary power, it may specifically prohibit parallel state legislation, i.e., occupy or preempt, the field . . . ." 1 R. Rotunda, J. Nowak & J. Young, Constitutional Law: Substance and Procedure (1986) § 12.1, p. 623.

those currently mandated by section 31-51h the bill presents the same questions as are being litigated in [*Ilsley*]. If the Court of Appeals reverses the lower court ruling, section 31-51h will continue to be applicable, making Bill 345 totally unnecessary. If the Court of Appeals affirms the lower court ruling rendering section 31-51h void, the legislation before you continues rather than resolves the legal defects upon which such a decision would be based." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1982 Sess., p. 118. The pertinent part of § 31-284b provides, as did § 31-51h, that an employer, when it has provided fringe benefits for its working employees, must create a plan for the injured employee who is receiving or is entitled to receive workers' compensation. We therefore conclude that there is nothing surrounding the enactment of § 31-284b to indicate that the 1982 legislature intended to change the benefits transferrable to the fund under § 31-349.

The legislature also provided in § 31-284b that in any case where workers' compensation payments to an individual for total incapacity under the provisions of § 31-307 continue for more than 104 weeks, health and life insurance benefits are transferrable to the fund in accordance with § 31-349. General Statutes § 31-284b (d). This section was drafted to incorporate that portion of § 31-51h, enacted as No. 81–464 of the 1981 Public Acts, intended to deal with "an employee that is totally incapacitated and if that's the case [then] that particular liability or burden that the employer would bear in carrying out his health benefits would be picked up by the second injury fund under Workers' Compensation." 24 S. Proc., Pt. 9, 1981 Sess., p. 2828, remarks of Senator Michael J. Skelley. Only in that instance has the legislature expressly transferred liability for § 31-284b benefits to the fund. Again, this reflects no substantive change from the previously enacted § 31-51h.

We also note that the legislative history of § 31-349 contains no reference to the transferability of § 31-284b benefits pursuant to a § 31-349 transfer based on a pre-existing impairment. Despite the flurry of activity in this area in 1981 and 1982, the legislature made no substantive changes to § 31-349.[13] " 'The [legislature] is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces.' " *Southern New England Telephone Co.* v. *Public Utilities Commission*, 144 Conn. 516, 523, 134 A.2d 351 (1957). We therefore find that the lack of any substantive changes to § 31-349 during and following the passage of § 31-284b reflects the legislature's decision not to transfer the employer's liability for § 31-284b benefits to the fund.

Additionally, although § 31-349 has existed in some form since 1949, Norwich has failed to cite any recorded instance of the fund's willingness to accept responsibility for paying health insurance benefits as "compensation." It appears that in the history of § 31-349 transfers, the fund has never assumed liability for an employer's obligations for § 31-284b benefits pursuant to a § 31-349 transfer based on a preexisting impairment. See *Luis* v. *Frito-Lay, Inc.*, 10 Conn. Workers' Comp. Rev. Op. 50 (1992) (obligation to pay § 31-284b benefits did not transfer to the fund when the obligation to pay indemnity and medical benefits transferred under § 31-349), rev'd on other grounds, *Luis* v. *Frito-Lay, Inc.*, Supreme Court, Docket No. SC 14536 (order, April 27, 1993).[14] Although not dispositive, we accord

---

[13] The 1982 amendment to § 31-349 replacing the reference to § 31-51h with a reference to § 31-284b was to provide consistency and was therefore merely technical.

[14] The part of this opinion relating to § 31-284b benefits for private employment was reversed by this court in *Luis* v. *Frito-Lay, Inc.*, Supreme Court, Docket No. SC 14536 (order, April 27, 1993), because of the decision of

great weight to the construction given to the workers' compensation statutes by the commissioner and review board. See *Crochiere* v. *Board of Education,* 227 Conn. 333, 354, 630 A.2d 1027 (1993). We therefore find, in the case of an employee with a preexisting impairment, no legislative intent to mandate the transfer of liability for § 31-284b benefits to the fund as "compensation" under § 31-349.

Furthermore, we disagree with Norwich's contention that our ruling in *Deschnow* v. *Stamford,* 214 Conn. 394, 572 A.2d 345 (1990), compels a contrary conclusion. In *Deschnow,* we considered "the eligibility of disabled members of municipal police and fire departments, who are entitled to compensation under General Statutes § 7-433c, the Heart and Hypertension Act, to receive insurance coverage from their municipal employers in accordance with General Statutes § 31-284b (a)." Id., 394–95. After first noting that § 7-433c entitled qualifying injured municipal officers and firefighters to receive from their employers "compensation and medical care in the same amount and the same manner" as provided to a disabled employee under the workers' compensation statute, we looked to the broad definition of "income" in the workers' compensation statute for guidance in construing the scope of "compensation" under § 7-433c. Id., 397–98; see also *Felia* v. *Westport,* 214 Conn. 181, 185, 571 A.2d 89 (1990). As a result, we concluded that "the economic benefits that qualify as 'compensation' under § 7-433c

the United States Supreme Court in *District of Columbia* v. *Greater Washington Board of Trade,* 506 U.S. 125, 127, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992) (ERISA preempts District of Columbia's law requiring employers who provide health insurance for their employees to provide equivalent health insurance coverage for injured employees eligible for workers' compensation benefits). The state and municipalities, however, continue to provide § 31-284b benefits and may seek reimbursement under General Statutes § 31-349 (e) for those health insurance premiums for their employees collecting benefits pursuant to § 31-307 for more than 104 weeks.

may include [§ 31-284b type] fringe benefits, in appropriate circumstances." *Deschnow* v. *Stamford*, supra, 398.

Citing *Deschnow*, Norwich contends that "[t]he Supreme Court has thus definitively ruled that the term 'compensation' as utilized in the Workers' Compensation Act includes group benefits provided pursuant to § 31-284b." Norwich's position, however, misstates the import of *Deschnow* and ignores the specific legal issue before us in that case. "It is a general rule that a case resolves only the issues explicitly decided in the case." *State* v. *Ouellette*, 190 Conn. 84, 91, 459 A.2d 1005 (1983). Unlike *Deschnow*, the issue here is not whether Civardi is entitled to § 31-284b benefits, but rather, whether the fund, and not Norwich, must pay for those benefits subsequent to the § 31-349 transfer. Thus, instead of interpreting "compensation" broadly to comport with the remedial purpose of a statute such as § 7-433c, we must construe it narrowly to implement the limited purposes for which the legislature created the fund when it enacted § 31-349. See *Going* v. *Cromwell Fire District*, supra, 159 Conn. 61. Consequently, our categorization of § 31-284b benefits as "compensation" in the specific context of § 7-433c benefit entitlement does not govern our interpretation of the meaning of "compensation" within § 31-349.

The judgment of the compensation review board is affirmed.

In this opinion the other justices concurred.