LUCY DAVIS *v.* CITY OF NORWICH ET AL.
(15066)

PETERS, C. J., and BERDON, NORCOTT, KATZ and PALMER, Js.

Argued January 3—decision released February 28, 1995

*Richard S. Bartlett,* for the appellants (named defendant et al.).

*Carolyn A. Signorelli,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant Second Injury Fund).

KATZ, J. The dispositive issue in this appeal is whether the failure by the named defendant, the city of Norwich, timely to file a notice of its intent to transfer to the defendant second injury fund (fund) its liability for its employee's claim for disability compensation prevents it from later transferring a claim by the employee's widow for death benefits. We conclude that it does.

The following facts are undisputed. On March 24, 1984, Leo Davis (decedent) suffered a myocardial infarction that arose during and in the course of his employment as a firefighter with Norwich. As a result of the infarction, the decedent was unable to continue working and on May 2, 1985, he retired from his employment with Norwich. Norwich paid workers' compensation benefits to the decedent at various times between March 24, 1984, and May 2, 1985, and on a continuous basis from May 2, 1985, until February 25, 1988. At no time did Norwich provide the fund with

any notice of its intent to transfer the benefits pursuant
to General Statutes (Rev. to 1983) § 31-349.[1] Accord-

---

[1] General Statutes (Rev. to 1983) § 31-349 provides: "COMPENSATION FOR
SECOND DISABILITY. PAYMENT OF INSURANCE COVERAGE FOR TOTALLY
INCAPACITATED PERSONS. The fact that an employee has suffered previ-
ous disability, or received compensation therefor, shall not preclude him
from compensation for a later injury, nor preclude compensation for death
resulting therefrom. If an employee who has previously incurred, by acciden-
tal injury, disease or congenital causes, total or partial loss of, or loss of
use of, one hand, one arm, one foot or one eye, or who has other perma-
nent physical impairment, incurs a second disability by accident or disease
arising out of and in the course of his employment, resulting in a perma-
nent disability caused by both conditions which is materially and substan-
tially greater than that which would have resulted from the second injury
alone, he shall receive compensation for the entire amount of disability,
including total disability, less any compensation benefits payable or paid
with respect to the previous disability, and necessary medical care, as else-
where provided in this chapter, notwithstanding the fact that part of such
disability was due to prior accidental injury, disease or congenital causes.
The employer by whom the employee is employed at the time of the injury,
or his insurance carrier, shall in the first instance pay all awards of com-
pensation and all medical expenses provided by this chapter for the first
one hundred four weeks of disability. As a condition precedent to the lia-
bility of the second injury fund, the employer or his insurance carrier must,
ninety days prior to the expiration of the one-hundred-four-week period,
notify the custodian of the second injury fund of the pending case and shall
furnish to said custodian a copy of the agreement or award together with
all information purporting to support his claim as to the liability of the sec-
ond injury fund, and shall make available to the custodian all medical reports
as the custodian shall desire. Failure on the part of the employer or the
carrier to comply does not relieve the employer or carrier of its obligation
to continue furnishing benefits under the provisions of this chapter. In the
event the custodian shall reject the claim of the employer and its insurer,
the question shall be submitted to the commissioner having jurisdiction,
as promptly as possible, and the employer or carrier shall continue furnishing
benefits until the outcome is finally decided, and if the employer or carrier
prevails all payments made beyond the one-hundred-four-week period shall
be reimbursed to the employer or carrier by the second injury fund. After
the employer or its insurer has completed the payment for the one-hundred-
four-week period, he shall file with the commissioner having jurisdiction,
and with the custodian of the second injury fund, a form indicating that
all compensation and medical bills have been paid for the one-hundred-four-
week period, and indicating thereon the date the custodian was notified
of the pending case. Thereafter all responsibility for compensation and med-
ical treatment shall be with the custodian of the second injury fund. If the

ingly, the claim was not transferred to the fund, and Norwich remained liable for the payment of the decedent's disability benefits.

On February 25, 1988, the decedent died as a result of an acute myocardial infarction, arteriosclerotic heart disease and hypertension. The decedent's treating physician stated that it was highly probable that the decedent's death was attributable to the 1984 infarction, which in turn had been caused by a preexisting impair-

subsequent injury of such an employee resulting from an accident arising out of and in the course of his employment shall result in the death of the employee, and it shall be determined that either the injury or death would not have occurred except for such preexisting permanent physical impairment, the employer or his insurance carrier shall, in the first instance, pay the funeral expense described in this chapter, and shall pay death benefits as may be due for the first one hundred four weeks. Ninety days prior to the expiration of the one-hundred-four-week period, the employer or his insurance carrier shall notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation has been paid for the one-hundred-four-week period, and indicating thereon the date that the custodian was notified of the pending case. Thereafter all responsibility for compensation shall be with the custodian of the second injury fund. Employees shall not be denied any of the benefits provided by any provisions of this chapter by reason of the execution of an acknowledgment of physical defect, but the benefits specified in this chapter which would be payable except for the execution of such acknowledgment shall be paid entirely out of the second injury fund. Claims for such benefits shall be filed with the commissioner, who shall refer such claims to the custodian of the second injury fund as specified above. The custodian of the second injury fund may make payment by way of final settlement in any matter concerning the fund, subject to the approval of the commissioner, when it is for the best interests of the injured employee. In any case where workers' compensation payments to an individual for total incapacity under the provisions of section 31-307 continue for more than one hundred four weeks, the cost of accident and health insurance or life insurance coverage required under section 31-284b shall be paid out of the second injury fund after the one hundred fourth week. Employers shall notify the custodian of the second injury fund within sixty days of the expiration of the one-hundred-four-week period that such coverage is required."

ment comprised of hypertension, presumed hyperlipidemia and coronary artery disease. Thereafter, on May 16, 1989, Lucy Davis, the decedent's widow (widow) was awarded dependent's benefits pursuant to General Statutes (Rev. to 1987) § 31-306.[2] On May 22, 1989, Norwich filed a notice with the fund indicating its intention to transfer its liability for the widow's benefits under § 31-349.[3] The parties agree that, apart from the issue of timeliness, the claim complied with the notice requirements and met the medical qualifications for transfer under § 31-349. They disagree, however, about whether Norwich's undisputed failure to file a notice

[2] General Statutes (Rev. to 1987) § 31-306 provides in pertinent part: "DEATH RESULTING FROM ACCIDENT OR OCCUPATIONAL DISEASE. DEPENDENTS. COMPENSATION. (a) The following-described persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee and are referred to hereinafter as presumptive defendants: (1) A wife upon a husband with whom she lives at the time of his injury or from whom she receives support regularly . . . .

"(b) Compensation shall be paid on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows:

"(1) There shall be paid the sum of three thousand dollars for burial expenses. If there is no one wholly or partially dependent upon the deceased employee, the burial expenses of three thousand dollars shall be paid to the person who assumes the responsibility of paying the funeral expenses.

"(2) To those wholly dependent upon the deceased employee at the time of his injury, a weekly compensation equal to sixty-six and two-thirds per cent of the average weekly earnings of the deceased at the time of injury but in no case more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred or less than twenty dollars weekly. In the case of an occupational disease, the time of injury shall be the date of total or partial incapacity to work as a result of such disease. . . .

"(3) If the surviving spouse is the sole presumptive dependent, compensation shall be paid until death or remarriage if such should occur. . . ."

[3] For purposes of clarification, we note that Norwich seeks relief under General Statutes (Rev. to 1987) § 31-349, the effective statute at the time of the decedent's death. The portions of the statute pertinent to this case are substantively identical to General Statutes (Rev. to 1983) § 31-349 and the parties do not argue that they are distinguishable. Because our analysis assumes that the second injury occurred in 1984; see footnote 4; we apply General Statutes (Rev. to 1983) § 31-349 to this case.

of its intent to transfer to the fund the decedent's disability claim ninety days before the expiration of the 104 weeks of disability precluded it from transferring the widow's death benefits claim.

Norwich argues that § 31-349 provides for two distinct and separate claims, one for disability and one for death benefits. According to Norwich, an employer may transfer either or both claims to the fund and must incur a separate 104 week period of liability for each claim. Therefore, Norwich contends that notice of its intent to transfer the death benefits claim to the fund was timely because it furnished notice of that claim to the fund ninety days before the expiration of the first 104 weeks of liability for that distinct claim as required by the statute.

The fund contends that § 31-349 contemplates a single 104 week period of employer liability for any injury regardless of whether the initial claim is for disability, death or a combination of both. Therefore, the fund argues that because the second injury occurred on March 24, 1984, and benefits were payable continuously from May 2, 1985, Norwich should have given notice ninety days before the expiration of the 104 week period after the decedent's 1984 heart attack. Accordingly, it contends that Norwich's notice of May 22, 1989, of its intent to transfer the death benefits claim was untimely.[4]

After hearings held on March 6, 1992, and July 17, 1992, the workers' compensation commission ordered

[4] We assume that the decedent's disability claim for the 1984 infarction was transferable as a second injury to the fund but for the failure of Norwich to file proper notice of that claim. The compensation review board apparently made the same assumption and the fund explicitly assumes that the disability claim was transferable. According to § 31-349, the employer has the burden to show that it is in compliance with the statute and entitled to transfer the widow's death benefits to the fund. General Statutes (Rev. to 1983) § 31-349. In this case, the transferability of the first claim deter-

the fund to assume liability for the death benefits claim. The fund appealed the commission's decision to the compensation review board, which reversed the commission's determination and concluded that because there is only one 104 week period of employer liability for the purposes of § 31-349, the employer has a single opportunity to transfer its liability for benefits to the fund. Because Norwich did not file a notice of its intent to transfer the decedent's disability benefits claim to the fund after the decedent's 1984 infarction, the notice to transfer the widow's 1989 death benefits claim was untimely. Norwich appealed from the decision of the compensation review board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We agree with the compensation review board's conclusion and, accordingly, affirm the judgment.

We first look to the controlling statute, § 31-349. Statutory construction is a question of law and therefore our review is plenary. *North Haven* v. *Planning & Zoning Commission*, 220 Conn. 556, 561, 600 A.2d 1004 (1991). It is well established that "[a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board." *Civardi* v. *Norwich*, 231 Conn. 287, 298–99, 649 A.2d 523 (1994). A state agency is not entitled, however, to special deference when its "determination of a question of law has not previously been subject to judicial scrutiny." *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 679, 628 A.2d 957 (1993). Therefore,

mines whether notice of the widow's death benefits claim was timely. Therefore, Norwich had the burden to show that the 1984 claim was not transferable. The record is devoid of evidence that would indicate the disability claim was not transferable. Rather, a letter from the decedent's treating physician indicates that the 1984 infarction was the result of a preexisting condition.

although we agree with the compensation review board's conclusion, we do not accord special weight to its construction of § 31-349.

Section 31-349 provides for shared liability for disability and death benefits compensation. In the case of "an employee who has previously incurred . . . [a] permanent physical impairment, [and who] incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone . . . [the employer is responsible for paying the injured employee] compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability." General Statutes (Rev. to 1983) § 31-349. Thereafter, if proper notice is filed with the fund ninety days before the expiration of the 104 week period, liability for compensation may be transferred to the custodian of the fund. Separately, § 31-349 provides that "[i]f the subsequent injury . . . result[s] in the death of the employee, and it shall be determined that either the injury or death would not have occurred except for such preexisting permanent physical impairment, the employer or his insurance carrier shall . . . pay death benefits as may be due for the first one hundred four weeks." Again, if proper notice is filed with the fund ninety days before the expiration of the 104 week period, liability for death benefits may be transferred to the custodian of the fund.

We conclude that there are at least two possible interpretations of the language of § 31-349. The statute could be interpreted to require the employer to incur a single 104 week period of liability per injury for a transferable claim beginning with the onset of liability for either disability compensation or death benefits. An alternative interpretation would be that the

statute includes two separate and distinct possible claims that may be transferred to the fund: one claim for disability compensation and one claim for death benefits. Such an interpretation would recognize that the two claims are discussed separately in the statute and that each claim depends on different criteria to show the appropriateness of the transfer to the fund.[5]

When we interpret a statute, we search for an effective construction that reasonably accords with the legislature's intent. *Bartholomew* v. *Schweizer*, 217 Conn. 671, 675–76, 587 A.2d 1014 (1991). Because the statutory language is susceptible to more than one plausible interpretation, we look to the statute's legislative history and the purpose the statute is to serve to ascertain and give effect to the intent of the legislature. *Mercado* v. *Commissioner of Income Maintenance*, 222 Conn. 69, 74, 607 A.2d 1142 (1992).

We begin our analysis with a discussion of the fund's history and the purpose underlying its enactment. The Workers' Compensation Act (act) initially was interpreted to require an employer to assume total liability for any work related injury suffered by an employee even if the severity of such an injury had been aggravated by a preexisting disability. See, e.g., *Fair* v. *Hartford Rubber Works Co.*, 95 Conn. 350, 111 A. 193 (1920), superseded by statute as stated in *Jacques* v. *H. O. Penn Machinery Co.*, 166 Conn. 352, 357, 349 A.2d 847 (1974). Employers therefore hesitated to hire handicapped persons because if a previously injured or disabled employee were then injured on the job, the employer would be required to compensate the

---

[5] In order to transfer a disability compensation claim, the employer must show that the disability is "materially and substantially greater than that which would have resulted from the second injury alone." General Statutes (Rev. to 1983) § 31-349. In contrast, pursuant to § 31-349 death benefits may be transferred if the employer shows that "death would not have occurred except for [the] preexisting . . . impairment . . . ."

employee for the entire resulting disability even though the severity of the second injury might have been attributable substantially to the preexisting condition.

In response, the legislature amended the act to permit employers "to condition the employment of handicapped workers on their written waiver of any future compensation attributable to their physical defects." *Jacques* v. *H. O. Penn Machinery Co.*, supra, 166 Conn. 356–57. This protected employers, but left handicapped employees vulnerable to total loss of income if they ever became completely disabled due to a second injury. Id.

Thereafter, in 1945, the legislature established the fund, primarily to encourage the employment of persons with an existing disability and, at the same time, to provide adequate workers' compensation benefits for them. *Civardi* v. *Norwich*, supra, 231 Conn. 293; *Hernandez* v. *Gerber Group*, 222 Conn. 78, 82, 608 A.2d 87 (1992); *Jacques* v. *H. O. Penn Machinery Co.*, supra, 166 Conn. 355. Additionally, by creating the fund, the legislature intended to "relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment"; (internal quotation marks omitted) *Civardi* v. *Norwich*, supra, 293, quoting *Hernandez* v. *Gerber Group*, supra, 82; *Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 185, 384 A.2d 363 (1978); *Jacques* v. *H. O. Penn Machinery Co.*, supra, 356; 2 A. Larson, Workmen's Compensation Law (1994) § 59.31 (a), p. 10-492.399 and § 59.34 (a) (1), p. 10-528; especially considering that "the combined effect of a successive injury to someone with a preexisting disability can far exceed the combined allowances for each injury existing separately." *Civardi* v. *Norwich*, supra, 294.

In 1967, the legislature amended § 31-349 to include, inter alia, the present limitation of the employer's liability to 104 weeks. Public Acts 1967, No. 842, § 20.

This allocation of liability was intended to charge the employer only with an approximation of those benefits attributable solely to the second, employment related injury. By charging the employer with a predetermined period of 104 weeks of liability, the legislature sought to eliminate the administrative problems inherent in a case-by-case apportionment process. A. Larson, supra, § 59-34 (b), p. 10-553.

In 1971, the legislature added the following notice provision: "As a condition precedent to the liability of the second injury fund, the employer . . . must, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire. . . ." Public Acts 1971, No. 447, § 1. " 'The object of the ninety-day statutory notice is to enable the fund to be apprised promptly of such a claim being made, to obtain a copy of the agreement or award and to have immediate access to all medical reports. Such information is essential to enable the fund to assess promptly its alleged liability and to establish immediately its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it.' " *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 392, 618 A.2d 1340 (1993) (construing notice requirements of § 31-349 to require strict compliance), quoting *Plesz* v. *United Technologies Corp.*, supra, 174 Conn. 188.

We are persuaded, in light of the legislative history and the purpose of the statute, that the most reasonable construction of § 31-349 is that the 104 week period runs from the time the employee is disabled as a result

of the second injury, and that the fund is liable for any combination of disability compensation and death benefits only if the employer gives the fund notice of the second injury at least ninety days before the expiration of that 104 week period. See *Jones* v. *Mansfield Training School*, 220 Conn. 721, 726, 601 A.2d 507 (1992) ("[i]f there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable").

First, the ninety day notice requirement was included to give the fund a timely opportunity to evaluate any claim. *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 392. If we were to accept Norwich's construction and conclude that the statute includes two separate and distinct claims, an employer who had not transferred a disability compensation claim to the fund would have a second opportunity to transfer liability for death benefits. This opportunity could arise many years after the occurrence of the second injury, as it did in this case, and the fund's ability to evaluate properly such a stale claim would be difficult, if not impossible. Such a construction would defeat the purpose of the notice requirement and foreclose the opportunity for a relevant inquiry into the second claim.

Although in this case Norwich failed to transfer the disability benefits claim within the window following the decedent's March, 1984 infarction, our conclusion also affects employers that properly transfer disability claims to the fund under § 31-349 after paying the first 104 weeks of disability benefits. If the second injury were later to result in death and a subsequent claim for death benefits were to be made regarding the same injury, Norwich's interpretation would require an employer to repeat the statutory procedure in order to transfer a death benefits claim to the fund. In addition to assuming liability for an additional 104 weeks for death benefits, an employer would again be required

to give proper notice to the fund and demonstrate the cause of death, potentially many years after liability for the disability benefits had been transferred to the fund. Consequently, this construction would require employers to maintain records for an indeterminate amount of time after each disability compensation claim had been transferred to the fund.[6] This tortured construction would undermine the statutory purpose of administrative simplicity. See A. Larson, supra, § 59.34 (b), p. 10-553. Therefore, we decline to interpret § 31-349 to require an employer to assume liability for 208 weeks of compensation any time an employee with a preexisting injury or disability suffers a second injury and later predeceases a dependent who claims death benefits.

Our decision acknowledges that the legislature has implicitly determined that any compensation that must be paid after the initial 104 weeks is attributable to the preexisting injury or the aggravated result of the preexisting condition and the second injury combined. See A. Larson, supra, §§ 59.31 (a) and 59.34 (a)(1). The 104 week period constitutes the following allocation of liability by the legislature: (1) 104 weeks of benefits are allocated to the second, work related injury and are therefore the employer's responsibility; and (2) any benefits paid after the initial 104 week period are attributable to the preexisting injury, are not the employer's responsibility and may be transferred to the fund. Id. Norwich's contention that the employer may be liable for up to 208 weeks of compensation benefits under-

---

[6] If an employer were to seek to transfer to the fund a later claim for death benefits, it would have to show that "death would not have occurred except for [the] preexisting . . . impairment . . . ." General Statutes (Rev. to 1983) § 31-349. The employer would be required, therefore, to maintain all information pertaining to the preexisting injury, and because it would be impossible to predict which disability claims might subsequently result in death benefits claims, the employer would be forced to maintain files on all disability claims that were transferred to the fund.

mines the legislature's assessment and charges the employer with liability for benefits attributable to the preexisting injury contrary to the legislature's intent.

Finally, we have repeatedly cautioned that "[p]ayment of an award from a special fund such as the second injury . . . fund, which was established, inter alia, to assist in the payment of compensation awarded to handicapped and disadvantaged workers . . . should be made only in accordance with express statutory authority . . . ." (Citations omitted; internal quotation marks omitted.) *Civardi* v. *Norwich*, supra, 231 Conn. 294. There is no express authority to transfer death benefits to the fund separately and in addition to disability compensation. Nor is there explicit authority to transfer death benefits to the fund in lieu of compliance with the stated notice provisions when a second injury previously has resulted in an employer's liability for disability compensation. In light of these considerations, we have regularly required strict compliance with the notice provisions of § 31-349. See *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 396; *Plesz* v. *United Technologies Corp.*, supra, 174 Conn. 188; *Kiernan* v. *Roadway Express, Inc.*, 15 Conn. App. 625, 630–31, 545 A.2d 1158, cert. denied, 210 Conn. 801, 553 A.2d 615 (1988).

We conclude therefore that § 31-349 requires an employer to assume liability for benefits only during a single 104 week period for any employee who sustains a compensable second injury for which the benefits are properly transferred to the fund. Further, we conclude that an employer must give notice to the fund of any transferable claim ninety days before the termination of that 104 week period and that an employer has only one opportunity to transfer to the fund its liability for benefits incurred because of a second injury. Because Norwich did not notify the fund of its intent to transfer the decedent's disability compensation

claim, we conclude that Norwich's notice of its intent to transfer the widow's death benefits claim, four years after the second injury had occurred, was untimely.

The judgment of the compensation review board is affirmed.

In this opinion the other justices concurred.