## MICHAEL ABBOTT *v.* GENERAL DYNAMICS CORPORATION, ELECTRIC BOAT DIVISION, ET AL. (15203)

Foti, Lavery and Daly, Js.

Argued September 24—officially released December 10, 1996

*Booth M. Kelly, Jr.*, for the appellant (named defendant).

*Taka Iwashita*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough* and *Michael Belzer*, assistant attorneys general, for the appellee (second injury fund).

FOTI, J. The employer, the Electric Boat Division of General Dynamics Corporation (Electric Boat), appeals from the decision of the workers' compensation review board (board) upholding the decision of the compensation commissioner (commissioner) that Electric Boat could not transfer liability to the second injury fund (fund) until it paid benefits for 208 weeks. The issue on appeal is whether the board improperly applied General Statutes § 31-349 to require the employer to pay more than 104 weeks of temporary total disability benefits before transferring liability to the fund.

The commissioner found the following facts. The plaintiff, Michael Abbott,[1] had a history of injuries to his back and neck. On August 3, 1990, he again sustained injuries to his neck and back from a single accident. After numerous consultations and treatments, the plaintiff underwent cervical surgery. As a result of the surgery, the plaintiff died on November 5, 1992. The plaintiff had received total disability benefits from the date of injury until his death. He is survived by a dependent child, Dustee L. Abbott, whose date of birth is

---

[1] The plaintiff's entitlement to benefits was not at stake in the proceedings before the commissioner. The only parties in interest are the employer and the second injury fund.

August 21, 1975. After her father's death, she received dependent's benefits pursuant to General Statutes § 31-306.[2]

The commissioner ruled that benefit liability was transferable to the fund pursuant to General Statutes § 31-349.[3] Because there were two separate preexisting injuries that were aggravated by the single accident, however, the commissioner concluded that Electric Boat could not transfer benefit liability until it paid benefits for 208 weeks.

Electric Boat petitioned for review of the commissioner's decision to the board. The board upheld the commissioner's decision. It ruled that "[w]here a claimant has suffered more than one compensable injury from an accident, and those injuries are not causally related to each other . . . [the term] 'disability' as used in § 31-349 (a) refers to each individual injury for the purpose of calculating the 104 week period."

In appealing the board's decision to this court, Electric Boat claims that the board improperly interpreted § 31-349 and the Supreme Court decisions of *Lovett* v. *Atlas Truck Leasing*, 171 Conn. 577, 370 A.2d 1061 (1976), and *Hernandez* v. *Gerber Group*, 222 Conn. 78,

---

[2] Section 31-306 awards compensation payments to the dependents of an employee whose work related injury results in death.

[3] General Statutes § 31-349 (a) provides in pertinent part: "The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation . . . ."

General Statutes § 31-349 (b) provides in pertinent part: "The employer by whom the employee is employed at the time of the second injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. . . ."

608 A.2d 87 (1992), in determining that it could not transfer benefit liability to the fund after 104 weeks, but instead had to pay benefits for 208 weeks before the fund would become responsible.

In evaluating the board's decision, we recognize that " '[t]he power and duty of determining the facts [rest] on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.'. . . *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988)." *Hernandez* v. *Gerber Group*, supra, 222 Conn. 81–82 n.3. "The board does not retry the facts and . . . is bound by the commissioner's findings." *Rowe* v. *Plastic Design, Inc.*, 37 Conn. App. 131, 135, 655 A.2d 270 (1995).

"Under § 31-349, the Connecticut second injury fund statute, [i]f an employee who has . . . [a] permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, the employer's obligation is limited to the first 104 weeks of the employee's disability. Thereafter, liability for all compensation for the injury shifts to the [f]und." (Internal quotation marks omitted.) *Hernandez* v. *Gerber Group*, supra, 222 Conn. 82. "This allocation of liability was intended to charge the employer only with an approximation of those benefits attributable solely to the second, employment related injury. By charging the employer with a predetermined period of 104 weeks of liability, the legislature sought to eliminate the administrative problems inherent in a case-by-case apportionment process. [2] A. Larson,

[Workmen's Compensation Law (1994)] § 59.34 (b), p. 10-553." *Davis* v. *Norwich*, 232 Conn. 311, 321, 654 A.2d 1221 (1995). "[T]he legislature established the [second injury] fund, primarily to encourage the employment of persons with an existing disability and, at the same time, to provide adequate workers' compensation benefits for them." Id., 320.

The board relied on *Lovett* v. *Atlas Truck Leasing*, supra, 171 Conn. 577, in affirming the commissioner's decision that each disability is a separate injury pursuant to § 31-349. In that case, our Supreme Court stated that "the second injury fund may become liable for permanent disability to each part of the body covered by the act, with each disability to be considered a separate injury, notwithstanding the fact that more than one injury may arise out of the same accident." Id., 585–86. In *Lovett*, the plaintiff suffered numerous injuries, including damage to both eyes, when a tire exploded. Id., 579. The plaintiff had a preexisting condition in each eye known as an astigmatism.[4] Id. After the explosion, the plaintiff had lost 40 percent of the vision in his right eye. Id., 580. The commissioner found that the right eye suffered permanent partial impairment, but that the fund did not have present liability because the compensation award was less than 104 weeks. Id., 580 n.2. The plaintiff completely lost vision in his left eye as a result of the explosion. Id. The commissioner did not allow transfer of the benefits for the injury to the left eye because the disability in that eye would have been the same after the explosion regardless of whether the plaintiff had the preexisting astigmatism. Id., 581.

Electric Boat argues that *Hernandez* v. *Gerber Group*, supra, 222 Conn. 78, rejects the board's interpre-

---

[1] Astigmatism involves the shape of the lens, the front portion of the eye. *Lovett* v. *Atlas Truck Leasing*, supra, 171 Conn. 579. Because of the astigmatism in his eyes, the plaintiff had a 33 percent diminution of vision in his left eye and a 20 percent diminution of vision in the right eye. Id.

tation that 104 weeks must be paid on each body part before liability can be transferred under § 31-349. In *Hernandez*, the plaintiff had a preexisting heart condition. He suffered a heart attack in the course of his employment. Id., 80. During the course of treatment, the plaintiff suffered permanent partial disability of his leg. Id., 81. The commissioner found that there was a direct causal relationship between the preexisting heart condition and a later injury to the leg. The commissioner distinguished the facts from *Lovett* v. *Atlas Truck Leasing*, supra, 171 Conn. 577, because the commissioner found the causal connection between the preexisting condition and the subsequent injury that was lacking in *Lovett*. *Hernandez* v. *Gerber Group*, supra, 85–86. Our Supreme Court concluded that the commissioner properly transferred benefit payments to the fund after 104 weeks. Id., 81.

Electric Boat challenges the commissioner's finding that there were two separate injuries. Electric Boat sets out a version of the facts to distinguish this case from *Lovett* and more closely to parallel *Hernandez*. It contends that the accident caused injury to the plaintiff's head and neck only, and that this injury led to the aggravation of the preexisting condition of his back. This is not the factual situation found by the commissioner in this case. The plaintiff in this case had preexisting conditions in both his back and neck. The commissioner found that the single accident caused injury to both the plaintiff's neck and back, which aggravated the preexisting conditions of those body parts. In *Hernandez*, there was only one injury and one preexisting injury, both of which contributed to the heart attack that led to the leg injury. The issue was whether liability could be transferred pursuant to § 31-349 where the preexisting condition affected a different body part. In *Lovett*, the preexisting condition entered the chain of causation only with respect to the injury to the right

eye. Only the injury to the right eye was potentially transferable pursuant to § 31-349. The Supreme Court did not address, in either case, the situation of two compensable disabilities transferred pursuant to § 31-349. Neither decision, therefore, is dispositive of the issue before this court.

These decisions, however, provide us with the policy behind the fund to help us resolve the issue before us. In *Hernandez*, our Supreme Court stated that "[t]his case illustrates the wisdom of the legislature's policy of requiring the [f]und to assume liability for injuries that are causally related to preexisting disabilities. If persons with a history of heart trouble are at risk for developing leg problems, and the [f]und did not pay for those leg problems, it would be rational for employers to discriminate against workers with a history of heart trouble, and employers who did not so discriminate would be unfairly disadvantaged. That would be precisely the result that the [f]und was designed to prevent. A statute is not to be interpreted to thwart its purpose. . . ." (Citations omitted; internal quotation marks omitted.) *Hernandez* v. *Gerber Group*, supra, 222 Conn. 86–87; see also *Lovett* v. *Atlas Truck Leasing*, supra, 171 Conn. 581–84.

"The legislature's remedial purpose in enacting § 31-349 is well established. To prevent discrimination against [workers with disabilities], while providing the benefits of [workers'] compensation to such workers, virtually every state has enacted some form of second injury fund legislation. . . . Such legislation is also designed to relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment. . . ." (Citations omitted; internal quotation marks omitted.) *Hernandez* v. *Gerber Group*, supra, 222 Conn. 82.

Awarding separate 104 week periods for each disabled body part that had a preexisting injury is contrary

to the policy behind the fund and would thwart the purpose of the legislature in enacting § 31-349. Should a potential employee have more than one preexisting condition, it would be rational for the employer to discriminate against the employee so as not to be forced to pay benefits beyond a single 104 week period if a subsequent employment related injury occurred. We conclude, therefore, that, pursuant to § 31-349, an employer should not be liable for more than 104 weeks of benefit payments before transferring liability to the second injury fund.

The decision of the compensation review board is reversed and the case is remanded with direction to reverse the commissioner's ruling that liability could not be transferred to the fund until benefits had been paid for 208 weeks.

In this opinion the other judges concurred.